Exhibit 1

## Policy 11022.1:  Detainee Transfers

| | |
|---|---|
| **Issue Date:** | **January 4, 2012** |
| **Effective Date:** | **January 4, 2012** |
| **Superseded:** | All Immigration and Customs Enforcement (ICE) documents that reference or provide guidance related to detainee transfers must be revised in accordance with this Directive. |

**Federal Enterprise Architecture Number:** 306-112-002b

1. **Purpose/Background.**  This Directive establishes new prioritized transfer determinations that are meant to minimize, to the extent possible, detainee transfers outside the area of responsibility and to provide cost savings to the agency.

   This Directive consolidates and revises existing policies on how field offices make detainee transfer determinations and conducts transfers out of the Area of Responsibility (AOR).  Transfers of detainees within the AOR are not covered by this Directive.

   This Directive establishes responsibilities and procedures for ICE employees who perform detainee transfers and does not govern contract staff.  ICE employees are advised that responsibilities and procedures for contract staff can be found in their respective vendor agreements

2. **Policy.**  All detainee transfers and transfer determinations will be based on a thorough and systematic review of the most current information available.

3. **Definitions.**  The following definitions apply for purposes of this Directive only.

3.1. **Area of Responsibility (AOR).**  The geographic area of responsibility under the authority of a Field Office Director (FOD).

3.2. **Detainee transfer.**  The transfer of a detainee from one AOR to another.  The term does not include intake processing, or the transfer of aliens from facilities that are authorized for less than 72 hours, hold rooms, U.S. Customs and Border Protection Border Patrol stations, or Ports of Entry.  The term detainee transfer does not include the transfer of aliens to staging areas or facilities for the purpose of facilitating a scheduled final removal of aliens from the United States, nor does it include the final removal of aliens from the United States.

3.3. **Immediate family.**  This may include: mothers, fathers, step-parents, foster parents, brothers, sisters, stepbrothers, stepsisters, biological and adopted children, stepchildren, foster children, and spouses, including common-law marriage or civil unions and

cohabitating domestic partnerships legally recognized by a state or other governmental entity (e.g. District of Columbia, Puerto Rico, Guam).

**3.4.    Workday(s).** Monday through Friday excluding holidays or other local Enforcement and Removal Operations (ERO)/Executive Office for Immigration Review (EOIR) office closures.

**4.    Responsibilities.**

**4.1.    FODs, Supervisory Immigration Officers, Attorneys, Immigration Officers and Medical Staff** are responsible for complying with the policy and procedures set forth in this Directive.

**4.2.    FODs** are responsible for disseminating and enforcing this Directive and in conjunction with the Office of the Principal Legal Advisor (OPLA), developing protocols with EOIR court administrators within their AOR that ensure a regular exchange of timely and accurate hearing and detainee transfer schedule information.

**5.    Procedures.**

**5.1.    Filing of the Notice to Appear (NTA) for Transfers.** Unless impracticable because of logistical or other compelling factors that delay submission on a temporary or ongoing basis, NTAs will be submitted to EOIR within five (5) workdays of the NTA being served on the alien, or upon the alien entering ICE custody, whichever is later.  Proper submission of an NTA does not require delivery confirmation, receipt or further action by EOIR.  NTAs mailed to EOIR will only require postmark within the five (5) workdays to be considered timely.  All NTAs mailed will utilize a service which tracks mailing and receipt dates.

As a general rule, detainees will not be transferred without the A-Files, T-Files, or work folders.  If an A-File, T-File, or work folder does not accompany the transferred alien, the five (5) workdays provided for submitting the NTA to EOIR will not begin until the appropriate case officer, agent or other ICE employee who submits NTAs to EOIR receives the A-File, T-File or work folder.

**5.2.    Transfer Determinations.**

1)  Unless a transfer is deemed necessary by a FOD or his or her designee under paragraph (3) of this section, ICE Supervisory Immigration Officer(s) will not transfer a detainee when there is documentation to support the following:

a)  Immediate family within the AOR;

b)  An attorney of record (Form G-28, *Notice of Entry of Appearance as Attorney or Accredited Representative* on file) within the AOR;

AILA InfoNet Doc. No. 12020260. (Posted 02/02/12)

   c) Pending or on-going removal proceedings, where notification of such proceedings has been given, within the AOR; or

   d) Been granted bond or has been scheduled for a bond hearing.

2) The Immigration Officer will conduct a review to determine whether any of these factors exist. Before a transfer is made in a case where one or more of these factors exist, the transfer must be approved at the Assistant Field Office Director level or higher, and the reasons for the transfer must be documented in the detainee's A-File.

3) A transfer may be deemed necessary by a FOD or his or her designee for any of the following reasons:

   a) To provide appropriate medical or mental health care to the detainee.

   b) To fulfill an approved transfer request by the detainee.

   c) For the safety and security of the detainee, other detainees, detention personnel or any ICE employee.

   d) At ICE's discretion, for the convenience of the agency when the venue of EOIR proceedings is different than the venue in which the alien is detained.

   e) To transfer to a more appropriate detention facility based on the detainee's individual circumstances and risk factors.

   f) Termination of facility use due to failure to meet ICE detention standards, lack of sufficient use of the facility by ICE, or emergent situations.

   g) To relieve or prevent facility overcrowding; in such cases, efforts should first be made to identify for transfer those detainees who do not meet any of the criteria listed in section 5.2(1).

4) *Orantes* Class Members.

   a) ICE is prohibited from transferring Salvadoran class members who are not represented by counsel, from the judicial district of their apprehension for at least seven days to afford them the opportunity to secure counsel.

      i) The only exception to this rule applies to class members who are subject to expedited removal final orders. See *Orantes-Hernandez v. Gonzales*, No. 82-01107, Modified Consolidated Injunction, at paragraph 11.b. (C.D. Cal. Nov. 26, 2007*).*

AILA InfoNet Doc. No. 12020260. (Posted 02/02/12)

b) Salvadoran class members who *are* represented by counsel or obtain representation within the seven-day period can be transferred to other locations, but venue remains in the judicial district where each member's counsel is located.

c) For any questions regarding the treatment of Salvadoran nationals in ICE custody, pursuant to the requirements of the *Orantes* settlement agreement, please contact the local ICE Office of Chief Counsel.

5) ICE Supervisory Immigration Officers will conduct a thorough review of the most current information available to make all detainee transfer determinations.

### 5.3. Notifications in the Event of a Detainee Transfer.

1) ICE will ensure that all necessary notifications are made to detainees and their attorneys when detainees are transferred. ICE is not required to notify family members or other third parties of a transfer.

2) Attorney notification. If a detainee has an attorney of record (Form G-28 on file), the sending field office will:

a) Notify the attorney that the detainee is being transferred and include the reason for the transfer and the name, location, and telephone number of the new facility as soon as practicable on the day of the transfer, but in no circumstances later than twenty four (24) hours after the transfer occurs.

b) Document the notification in:

i) The Detainee Transfer Check List; and

ii) The appropriate comments screen in ENFORCE.

c) Delay the notification when there are special security concerns, but only for the period of time justified by those concerns.

d) Appropriately document concerns in the detainee's A-File and the appropriate comments screen in ENFORCE.

3) Detainee notification. Immediately prior to transfer, the sending field office will ensure that the detainee is informed, in a language or manner he/she can understand, that he/she is being transferred to another facility and is not being removed (if applicable).

a) To ensure the safety of ICE personnel, ICE-will ensure that specific plans and time schedules are not discussed with detainees and that following notification, the detainee:

5

i) Is not permitted to make or receive any telephone calls until the detainee reaches the destination facility;

ii) Does not have contact with any detainee in the general population until the detainee reaches the destination facility; and

iii) Is notified that upon admission into the receiving facility, the detainee may place a domestic phone call, at no expense to the detainee.

b) The sending office will ensure that the detainee notification is documented in:

i) The Detainee Transfer Notification form; and

ii) The appropriate comments screen in ENFORCE.

c) At the time of the transfer, ICE will provide the detainee, in writing, the name, address, and telephone number of the facility to which they are being transferred, using the Detainee Transfer Notification form. ICE place a copy of the form in the detainee's A-File.

d) ICE will make sure that the detainee acknowledges, in writing, that they have received the transfer destination information and that it is their responsibility to notify family members if so desired, upon admission into the receiving facility.

4) EOIR notification. If a detainee has pending proceedings before EOIR, ICE must submit Form I-830, *Notice to EOIR: Alien Address*. If the alien has an appeal pending with Bureau of Immigration Appeals (BIA), the BIA must be notified. In all cases, a copy of Form I-830 will be placed in the A-file.

**5.4. Requests for Bed/Designation Transfers from Field Office to Field Office.**

1) FODs or their designees are responsible for ensuring that field offices which routinely transfer cases:

a) Establish a means of communication so that receiving field offices provide sending field offices daily information regarding available bed space; and

b) Provide the names and contact numbers of staff responsible for handling transfers.

2) While field offices are encouraged to communicate directly regarding available bed space, the headquarters Removal Management Division (RMD) is available to assist a field office that has unsuccessfully attempted to locate space.

3) Field offices seeking bed space in other field office jurisdictions should phone the request (or e-mail with a follow-up phone call) with sufficient details of the case to the designated field office contact.

4) Once a field office has preliminarily agreed to accept a detainee from another office, ICE will ensure that:

   a) The Form I-216, *Record of Persons and Property Transfer* is completed;

   b) Complete information detailing the alien's criminal history, medical or mental health concerns, or security risks is provided.

   c) Medical or mental health problems or prescribed medications are documented, either on Form USM-553 (or equivalent), *Medical Summary of Federal Prisoner/Alien in Transit,* or Form I-794, *In-Processing Health Screening,* and the form accompanies Form I-216;

   d) Security concerns are outlined on a separate page and attached to Form I-216; and

   e) A copy of the age verification documentation is attached if it is suspected that the detainee is a juvenile.

5) The FOD(s) or their designee(s) will arrange a method of providing medical histories to Intergovernmental Service Agreement (IGSA) facilities if the IGSA requires that the medical unit review medical histories prior to accepting a transfer.

6) The receiving field office will ensure that Form I-216 is reviewed for consistency with information previously communicated. If there are issues that were not previously relayed to the receiving field office, ICE Supervisory Immigration Officers at the receiving field office will ensure that the sending field office is notified that the transfer request may be declined unless the issues are resolved.

7) Once the receiving field office has agreed to accept the transfer of the detainee on Form I-216, the sending field office will communicate a mutually agreeable estimated time of arrival. The sending field office may not substitute any detainee on Form I-216 without prior approval of the receiving field office.

**5.5. Detainee Transfer Checklist and Transfer Notification Form.**

1) ICE will ensure that both the Detainee Transfer Checklist and Transfer Notification Form are completed and placed in the detainee's A-File or work folder; and that the A-File or work folder accompanies the detainee to the receiving facility.

2) If the Detainee Transfer Checklist cannot be completed prior to transfer, the detainee may be transferred only if the authorized receiving FOD or his or her designee has expressly waived that procedure. The sending field office will note any such waiver in the A-File.

**5.6. A-File.**

1) Prior to transfer, the sending field office will ensure that the A-File is obtained and, in accordance with the appropriate procedures of the ICE Policy Directive titled, "Alien Registration File (A-File) Creation, Maintenance, Organization, and Disclosure of Information":

   a) Forward the A-File to USCIS for consolidation; and

   b) Attach all documents and forms on the proper side of the A-File.

2) The sending field office will ensure that the A-File includes copies of the following properly executed documents, fastened in the file:

   a) I-216 and appropriate copies of Form I-77, Baggage Check (or IGSA equivalent);

   b) Form USM-553 or local Medical Transfer Summary form;

   c) Copy of Form I-213, *Record of Deportable Alien Form*;

   d) Original or photocopy of Form I-203/203A, *Order to Detain/Release Alien*;

   e) Detainee Transfer Checklist;

   f) Age verification documents (if applicable);

   g) A copy or printout of all previous Post Order Custody Reviews (POCRs) and travel document requests in a property envelope fastened to the file;

   h) Classification sheet;

   i) Charging documents/records of proceedings;

   j) Certified copies of convictions;

   k) Fingerprint cards;

   l) Photographs; and,

   m) Printouts from the Central Index System (CIS), ENFORCE and the FBI NCIC database.

3) If the sending field office is unable to obtain the A-File (and does not have a fully documented Temporary File), the detainee may not be transferred unless the receiving

field office, before the transfer takes place, accepts a work folder created by the sending field office that includes, at a minimum:

a) Certified copies of convictions or information as addressed in section 5.8;

b) Printouts from the Central Index System (CIS), ENFORCE, and the Federal Bureau of Investigation's (FBI) National Crime Information Center (NCIC) database;

c) Charging documents/copies of the EOIR record of proceedings;

d) Photographs and fingerprints;

e) A Computer Linked Application Information Management System (CLAIMS) printout;

f) A Treasury Enforcement Communications System (TECS) printout; and

g) Any other documents reasonably requested by the receiving field office.

4) The sending field office will ensure that the A-File or work folder accompanies the transfer, except for cases where the receiving field office requests that the A-File or work folder be mailed by overnight express to a particular location. If requested, the sending field office will ensure that it is mailed no later than the following business day.

5) The sending field office shall communicate as soon as possible any anticipated significant delays in the arrival time of the detainees or their files.

**5.7.      Charging Documents/Record of Proceeding.**

1) Before the transfer, all charging documents will be issued and signed by the individual with signatory authority for the sending field office.

2) If applicable, prior to transfer, all charging documents will be served on the detainee, including, but not limited to:

a) Form I-862, *Notice to Appear*;

b) Form I-200, *Warrant of Arrest*;

c) Form I-205, *Warrant of Removal*;

d) Form I-286, *Notification of Custody Decision*; and

e) Form I-826, *Notice of Rights*.

3) ICE will ensure that original charging documents or copies, if the originals have been submitted to EOIR (indicating proper service), are included in the A-File. A copy of the charging documents will be provided to the detainee.

**5.8. Certified Copies of Convictions.** A detainee may not be transferred if the certified copies of conviction relating to the charging document are not included in the A-File or work folder, unless the receiving field office has agreed in writing in advance to accept the case. In such instances, the sending field office will provide the Detainee Transfer Checklist point-of-contact names and phone numbers provided for:

1) The person at the sending field office responsible for obtaining the conviction record; and

2) An individual at the respective court or clerk's office where the record is located.

**5.9. Fingerprint Cards.** The sending field office will send the completed fingerprint cards in the A-File or work folder as noted below:

1) The cards will be signed by the alien and the official taking the fingerprints;

2) The cards will be completely filled out except for the address block requesting a disposition from the FBI;

3) The completed cards will be left in the A-File or work folder for the receiving field office to fill in the response address block and submit to the FBI and DHS Biometrics Support Center (when appropriate), unless the detainee is a Room-and-Board case (short-term staging); and

4) One fingerprint card should remain in the A-File or work folder at all times.

**5.10. Photographs.** The sending field office will take four (1 sheet of 4) new, standard booking-size photographs on photo quality paper and include any photos not needed for the transfer in the A-File or work folder.

**5.11. Medical Procedures and Information Required for Transfer.**

1) In advance of the transfer, ICE will ensure that the receiving facility is provided the USM-553 (facsimile or email is acceptable)

2) Transfer of the Detainee's Medical Record.

a) When a detainee is transferred within the ICE Health Service Corps (IHSC) system, IHSC will provide:

i) Form USM-553, or equivalent Medical Transfer Summary, and a copy of the detainee's full medical record; and

ii)  The full medical record in a sealed envelope or other container labeled with the detainee's name and A-number and marked "MEDICAL CONFIDENTIAL."

b)  When a detainee is transferred to an IGSA detention facility, ICE will ensure that the Transfer Summary will accompany the detainee. Whenever possible, a copy of the full medical record should accompany each detainee during transfer. If the full medical record is not available, it must be sent as soon as possible. FODs will work with IGSAs to make arrangement for the transfer of the full medical record.

3)  Medical Transfer Summary.

a)  The sending facility's medical staff will prepare a Medical Transfer Summary that must accompany the detainee. Either Form USM-553 or a facility-specific form may be used, provided it shows:

i)  Tuberculosis (TB) clearance, including Purified Protein Derivative (PPD) with the test dates, and chest x-ray results if the detainee has received a positive PPD reading;

ii)  Current mental and physical health status, including all significant health issues;

iii)  Current medications, with specific instructions for medications that must be administered en route; and

iv)  The name and contact information of the transferring medical official.

b)  The transporting officer may not transport a detainee without the Medical Transfer Summary.

c)  The transporting officer will review the information for completeness and make sure that he or she has the in-transit supplies required to provide to the detainee as indicated on the USM-553 or equivalent Medical Transfer Summary.

d)  Medical information is available to staff only on a need-to-know basis.

i)  Any officer who reviews the Medical Transfer Summary will protect the privacy of the detainee's medical information to the greatest extent possible.

ii)  Personnel may not share medical information unless necessary to safely fulfill transportation responsibilities.

    e) The transporting officer will deliver the Medical Transfer Summary to medical personnel, if practicable, or other staff at the receiving facility and will advise them of any medications provided to the detainee in transit.

4) Medical or Psychiatric Alert.

    a) Appropriate medical staff will notify the facility administrator when they determine that a detainee's physical or mental condition requires:

        i) Clearance by the medical staff prior to transfer; or

        ii) Medical escort and specialized care (e.g. dialysis) during transfer.

5) Medications.

    a) Prior to transfer, medical staff will provide the transporting officers instructions and, if applicable, medication(s) for the detainee's care in transit.

    b) Medical staff will ensure that the detainee is transferred with, at a minimum, seven (7) days worth of prescription medications (for TB medications, up to 15 days' supply) to guarantee the continuity of care throughout the transfer and subsequent intake process.

    c) ICE will ensure that medications:

        i) Are placed in a property envelope labeled with the detainee's name and A-number and appropriate administration instructions;

        ii) Accompany the transfer; and

        iii) If unused, are turned over to the receiving medical personnel.

## 5.12. Other Transfer Paperwork.

1) ICE will ensure that no detainee is transferred without a properly executed Form G-391, I-213, I-216, I-203/I-203A, or equivalent. IGSA facilities may use a local form as long as the form provides the required information.

2) ICE Supervisory Immigration Officers will ensure that records are checked to ascertain if the alien has a criminal history, is dangerous, or has an escape record or medical condition. Any information of an adverse nature must be clearly indicated on the Form G-391, I-216, I-203, or equivalent, and the escorting officers will be notified of the risk and warned to take the necessary precautions.

3) Before beginning the transfer or the detail, the escorting and transportation officers will read their instructions and clearly understand the purpose for which the detainee

AILA InfoNet Doc. No. 12020260. (Posted 02/02/12)

is being removed from the facility. The officers will also discuss emergency contingency plans with a supervisor and/or authorized ICE official before departure.

4) ICE will ensure that Form I-216:

   a) Includes the detainee's name, A-number and detention category;

   b) Indicates if the detainee has a criminal conviction, a history of violence, is an escape risk, or has a medical condition that may require attention during the transfer;

   c) Notes whether the detainee is on prescription medication; and

   d) Indicates the time of arrival estimated by the sending field office.

5) ICE will ensure that Form G-391, I-203/I-203A, or equivalent:

   a) Is properly signed and clearly indicates the name and A-number of the detainee(s);

   b) Indicates the place or places to be escorted; and

   c) Notes the purpose of the trip and other information necessary to efficiently carry out the transfer, or detail.

6) The receiving field office may request that copies of Form I-203/I-203A or I-213 be transmitted directly from the sending field office to the receiving facility.

## 5.13. Property.

1) Before transfer, the sending facility will ensure that all funds and small valuables are properly documented and closed out on Form G-589/I-77 (or local IGSA property receipt form).

2) If the receiving facility does not accept excess, oversized or bulky belongings (including, but not limited to, suitcases, cartons, televisions, etc.), the sending facility will:

   a) Arrange to store the property elsewhere; or

   b) Process the excess property in accordance with the ICE National Detention Standards (NDS) or Performance Based National Detention Standards (PBNDS) related to the destruction of contraband or abandoned property.

3) If the detainee refuses to provide an appropriate mailing address, or is financially able but unwilling to pay for shipping, ERO may dispose of the property after providing

AILA InfoNet Doc. No. 12020260. (Posted 02/02/12)

the detainee written notice in accordance with the ICE National Detention Standards (NDS) or Performance Based National Detention Standards (PBNDS) related to the destruction of contraband or abandoned property.

**5.14.** **Movements via ICE-Managed Aircraft.** When detainees are being transported by the ERO Flight Operations Unit, ICE will adhere to protocols established for ICE chartered removals

**5.15.** **Post Transfer Activities.**

1) Detainee Phone Calls.

a) After admission into the receiving facility the FOD will ensure that all detainees are given the opportunity to make a phone call at the government's expense.

2) ENFORCE.

a) The sending field office will ensure that appropriate screens in ENFORCE are complete, updated, and accurate.

b) Once the detainee reaches his or her destination, the receiving field office will update the appropriate screens in ENFORCE.

**5.16.** **Quality Assurance Review.** Consistent with the terms of this Directive, the FOD shall maintain statistics on transfers and have a quality assurance process in place to monitor all transfer decisions.

**6.** **Authorities/References.**

**6.1.** Immigration and Nationality Act, Pub. L. No. 82-414, §236(a) (1952) (codified as amended at 8 U.S.C. §§ 1101 et seq).

**6.2.** ICE Policy Directive No. 1-32.0, "Alien Registration File (A-File) Creation, Maintenance, Organization, and Disclosure of Information" (Oct. 2, 2009).

AILA InfoNet Doc. No. 12020260. (Posted 02/02/12)

**7.** **Attachments.**

**7.1.** Detainee Transfer Notification.

**7.2.** Detainee Transfer Checklist.

**8.** **No Private Right Statement.** This Directive is an internal policy statement of ICE. It is not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.


John Morton
**Director**
**U.S. Immigration and Customs Enforcement**

AILA InfoNet Doc. No. 12020260. (Posted 02/02/12)