# Exhibit 2

# U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT

## 11064.1: Facilitating Parental Interests in the Course of Civil Immigration Enforcement Activities

| | |
|---|---|
| **Issue Date:** | August 23, 2013 |
| **Effective Date:** | August 23, 2013 |
| **Superseded:** | N/A |

**Federal Enterprise Architecture Number:** 306-112-002b

1. **Purpose/Background.** U.S. Immigration and Customs Enforcement (ICE) is committed to intelligent, effective, safe and humane enforcement of the nation's immigration laws. ICE seeks to enforce immigration laws fairly and with respect for a parent's rights and responsibilities. This directive supplements existing ICE enforcement priority memoranda. This Directive establishes ICE policy and procedures to address the placement, monitoring, accommodation, and removal of certain alien parents. The Directive is particularly concerned with the placement, monitoring, accommodation, and removal of alien parents or legal guardians who are: 1) primary caretakers of minor children without regard to the dependent's citizenship; 2) parent and legal guardians who have a direct interest in family court proceeding involving a minor or child welfare proceedings in the United States; and 3) parents or legal guardians whose minor children are U.S. citizens (USCs) or lawful permanent residents (LPRs).

   This Directive is intended to complement the immigration enforcement priorities and prosecutorial discretion memoranda, as well as other related detention standards and policies that govern the intake, detention, and removal of alien parents. The security and safety of any ICE employee, detainee, ICE detention staff or member of the public will be paramount in the exercise of the procedures and requirements of this Directive.

2. **Policy.** ICE personnel should ensure that the agency's immigration enforcement activities do not unnecessarily disrupt the parental rights of both alien parents or legal guardians of minor children Particular attention should be paid to immigration enforcement activities involving: 1) parents or legal guardians who are primary caretakers; 2) parents or legal guardians who have a direct interest in family court or child welfare proceedings; 3) parents or legal guardians whose minor children are physically present in the United States and are USCs or LPRs. ICE will maintain a comprehensive process for identifying, placing, monitoring, accommodating, and removing alien parents or legal guardians of minor children while safeguarding their parental rights.

3. **Definitions.** The following definitions apply for the purposes of this Directive only.

AILA InfoNet Doc. No. 13082642. (Posted 8/26/13)

3.1. **Custody.** The period of time during which a person has been arrested or detained by ICE under its civil immigration enforcement authorities, is physically present in an ICE-owned, -leased, or -contracted detention facility pursuant to such authorities, or is being transported by ICE or an ICE contractor (including for the purposes of removal from the United States) pursuant to such authorities. Custody ends when the person is released from ICE's physical confinement or restraint, including upon transfer to another agency.

3.2. **Initial Placement.** The first facility where an alien is detained by ICE.

3.3. **Parental Rights.** The fundamental rights of parents to make decisions concerning the care, custody, and control of their minor children without regard to the child's citizenship, as provided for and limited by applicable law. The rights of legal guardians of minor children to make decisions concerning those children as provided for and limited by applicable law.

3.4. **Family Court or Child Welfare Proceeding.** A proceeding in which a family or dependency court or child welfare agency adjudicates or enforces the rights of parents or minor children through determination or modification of parenting plans, child custody, visitation, or support, or the distribution of property or other legal obligations in the context of parental rights.

4. **Responsibilities.**

4.1. **Enforcement and Removal Operations (ERO) Field Office Directors (FODs)** and their staff or designees have responsibilities under Sections 5.1 through 5.7.

4.2. The **ERO Executive Associate Director (EAD)** has responsibilities under Section 5.8 and 5.9.

4.3. The **ERO Field Operations Division** has responsibilities under Section 5.7 (Facilitation of Return).

4.4. The **Parental Rights Coordinator** has responsibilities under Sections 5.1, 5.8, and 5.10 (Training).

4.5. The **Field Point of Contact (POC) for Parental Rights** in each ERO Field Office have responsibilities under Sections 5.1, 5.2, and 5.8 (Implementation through Collaboration and Information Sharing).

4.6. **ICE Office of Detention Policy and Planning (ODPP)** has responsibilities under Section 5.10 (Training).

5. **Procedures/Requirements.**

### 5.1. Field Points of Contact for Parental Rights ("Field POCs").

1) Each ERO FOD shall designate a specially trained coordinator at the supervisory level in his or her Field Office to serve as the Field POC for Parental Rights for his/her area of responsibility (AOR). These Field POCs will regularly communicate with the Parental Rights Coordinator (See 5.8) and report to ERO HQ on the progress of implementing this Directive. The Field POCs will also participate in all relevant training offered by HQ ERO on the subject of this Directive.

2) Each Field POC shall receive and address public inquiries related to the parental rights or family ties of detained alien parents or legal guardians of minor children. Careful consideration should be given to cases involving parents or legal guardians who are primary caretakers, those who have a direct interest in family court or child welfare proceedings, and those whose minor children are USCs or LPRs. Inquiries may be received from detained or non-detained aliens, their family members, attorneys or representatives, advocacy groups, state and local family courts, and/or child welfare services, among others.

3) Information regarding how to contact the Field POCs shall be posted and publicized at detention facilities within each AOR and on the ICE website. Information will be made available in multiple languages to the extent practicable.

### 5.2. Prosecutorial Discretion and Identification.

1) *Prosecutorial Discretion.* FODs shall continue to weigh whether an exercise of prosecutorial discretion may be warranted for a given alien and shall consider all relevant factors in this determination, including whether the alien is a parent or legal guardian of a USC or LPR minor, or is a primary caretaker of a minor. While the FODs may exercise prosecutorial discretion at any stage of an enforcement proceeding, it is generally preferable to exercise such discretion as early in the case or proceeding as possible.

2) *Identification.* ICE may receive information that identifies an alien as a parent or legal guardian of a USC or LPR minor, or as a primary caretaker of a minor at any time during the alien's arrest, processing or detention.

   If such information is sufficiently credible to confirm the alien's status as a parent or legal guardian of a USC or LPR minor, or as a primary caretaker of a minor, FODs should reevaluate any custody determination for the alien to the extent permitted by law and in accordance with existing ICE policy.

   Once a detained alien has been determined to be a parent or legal guardian of a USC or LPR minor, or as a primary caretaker of a minor, the FOD or Field POC should also enter this information into ENFORCE.

### 5.3. Initial Placement and Subsequent Transfers.

1) If the alien's child, children, or family court or child welfare proceedings are within the AOR of initial apprehension, the FOD shall refrain from making an initial placement or from subsequently transferring the alien outside of the AOR of apprehension, unless deemed necessary by the FOD for the reasons outlined in Section 5.2(3) of ICE Policy 11022.1, Detainee Transfers (January 4, 2012) ("Detainee Transfer Directive"). FODs shall also note any transfers outside the AOR in the updated Detainee Transfer Checklist (attached).

2) Further, and subject to detention space availability, the FOD will initially place the detained alien parent as close as practicable to the alien's child(ren) and/or to the location of the alien's family court or child welfare proceedings (if any).

### 5.4. Nature of the Individual's Participation in Family Court or Child Welfare Proceedings.

1) *In-person appearance* -- When a detained alien parent or legal guardian's presence is required to participate in family court or child welfare proceedings in order for him or her to maintain, or regain, custody of his or her child(ren) and:

   a) The detained alien parent or legal guardian or his or her attorney or other representative requests with reasonable notice an opportunity to participate in such hearings;

   b) The detained alien parent or legal guardian, or his or her attorney or other representative, has produced evidence of a family court or child welfare proceeding, including but not limited to, a notice of hearing, scheduling letter, court order, or other such documentation;

   c) The family court or child welfare proceedings are located within a reasonable driving distance of the detention facility where the detained alien parent or legal guardian is housed;

   d) Transportation and escort of the detained alien parent or legal guardian would not be unduly burdensome on Field Office operations; and

   e) Such transportation and/or escort of the detained alien parent or legal guardian to participate in family court or child welfare proceedings does not present security and/or public safety concerns,

   The FOD shall arrange for the detained alien parent or legal guardian's in-person appearance at family court or child welfare proceedings, if practicable.

2) *Participation by video or standard teleconferencing* – If it is impracticable to transport the detained alien parent or legal guardian to appear in-person in a family

Facilitating Parental Interests in the Course of Civil Immigration Enforcement Activities

AILA InfoNet Doc. No. 13082642. (Posted 8/26/13)

court or child welfare proceeding, due to distance or safety or security concerns, the FOD should work with both the detained alien parent or legal guardian and the family court or child welfare authority to identify alternative means for the detained alien parent or legal guardian to participate in the proceeding. For instance, if it is technologically feasible, and approved by the family court or child welfare authority, the FOD may facilitate a detained alien parent's or legal guardian's appearance or participation through video or standard teleconferencing from the detention facility or the Field Office.

In all cases, if the detained alien parent or legal guardian does not wish to attend and/or participate in a family court or child welfare proceeding, ICE will not interfere with the detained alien parent's or legal guardian's decision, which shall be documented in the detainee's A-File.

**5.5. Visitation.**

1) In some cases, parent-child visitation may be required by the family court or child welfare authority in order for a detained alien parent or legal guardian to maintain or regain custody of his or her minor child(ren). If a detained alien parent or legal guardian, or his or her family member, attorney, or other representative produces documentation (e.g. a reunification plan, scheduling letter, court order, or other such documentation) of such a requirement, FODs shall facilitate, to the extent practicable, the required visitation between the detained alien parent or legal guardian and his or her minor child(ren).[1]

    a) Such special visitation may include contact visitation, within the constraints of safety and security for both facility staff and detainees.

    b) These special arrangements shall not limit or otherwise adversely affect the detained alien parent or legal guardian's normal visitation rights under the relevant detention standards, or the safe and efficient operation of the detention facility.

2) While in-person visitation is preferred and should be made available whenever practicable, if it is technologically feasible and approved by the family court or child welfare authority, FODs may permit parent-child visitation through video or standard teleconferencing from the detention facility or the Field Office.

---

[1] Pursuant to ICE detention standards, at facilities where there is no provision for visits by minors, upon request, FODs shall arrange for a visit by children, stepchildren, and/or foster children within the first 30 days. After that time, upon request, ICE shall consider a request for transfer, when possible, to a facility that will allow such visitation. Upon request, FODs shall continue monthly visits, if transfer is not approved, or until an approved transfer can be effected. *See* NDS 2000 (Section H.2.d); PBNDS 2008 (Section H.2.d); PBNDS 2011 (Section I.2.b).

### 5.6. Coordinating Care or Travel of Minor Children Pending Removal of a Parent or Legal Guardian.

1) Where detained alien parents or legal guardians who maintain their parental rights are subject to a final order of removal and ICE is effectuating their removal, FODs or their appropriate designees should accommodate, to the extent practicable, the detained parent or legal guardian's individual efforts to make provisions for their minor children. Such provisions may include the parent or legal guardian's attempt to arrange guardianship for his/her minor children to remain in the United States, or to obtain travel documents for their child(ren) to accompany them to their country of removal.

2) FODs will coordinate, to the extent practicable, within their local detention facilities and within the Field Office to afford detained alien parents or legal guardians access to counsel, consulates and consular officials, courts and/or family members in the weeks preceding removal in order to execute signed documents (e.g., powers of attorney, passport applications, appointments of guardians or other permissions), purchase airline tickets, and make other necessary preparations prior to removal.

3) In addition, the FOD may, subject to security considerations, provide sufficient notice of the removal itinerary to the detainee or through the detained alien's attorney or other representative, so that coordinated travel arrangements may be made for the alien's minor child(ren).

### 5.7. Facilitation of Return.

1) If a lawfully removed alien (or his or her attorney, family member, consular official or other representative) provides to ICE verifiable evidence indicating that he or she has a hearing or hearings related to his or her termination of parental or legal guardianship rights before a family court or child welfare authority in the United States, and the court or child welfare authority has determined that the removed parent or legal guardian must be physically present, rather than participating via other means, ICE may, on a case-by-case basis, while taking into account security and public safety considerations, facilitate the return of the alien to the United States by grant of parole for the sole purpose of participation in the termination of parental rights proceedings.

2) ICE shall consider facilitating the return of a removed parent or legal guardian in compelling humanitarian cases. Aliens who are allowed to return must acknowledge in writing that they may be subject to additional safeguards, including but not limited to, detention, electronic monitoring or routine reporting requirements. Prior to being paroled back into the United States, alien parents or legal guardians must confirm, in writing: (i) that their sole purpose in traveling to the United States is to attend their termination of parental rights hearings; (ii) that the grant of parole can be terminated at any time; (iii) that they are not traveling to the United States in order to pursue immigration benefits or relief or protection from removal, or to otherwise circumvent

orderly visa and immigration processing; (iv) that they will depart the United States without delay following the conclusion of the final parental rights termination hearing for which they traveled to the United States; and (v) that they understand that if they do not depart the United States promptly upon the completion of such hearing, they may be subject to removal from the United States without further hearing as an arriving alien. Additionally, facilitation of return under this Directive will not relieve an alien of any ground of inadmissibility, deportability, or ineligibility for immigration benefits or relief or protection from removal.

3) The alien will be responsible for incurring all costs associated with returning to United States to participate in the termination of parental rights hearings; the alien will also incur all costs for departing the United States at the conclusion of the hearing.

4) Requests to facilitate return will be considered and accommodated on a case-by-case basis, taking into account security and public safety considerations and other relevant factors, such as whether the family court or relevant child welfare authority will permit the removed alien to participate through alternative means, e.g., through video or standard teleconferencing.

## 5.8. Implementation through Collaboration and Information Sharing.

1) The ERO EAD shall designate a Parental Rights Coordinator.

2) The Parental Rights Coordinator shall be responsible for:

   a) Serving as the primary point of contact and subject matter expert for all FODs and Field POCs, regarding the parental rights of detained aliens.

   b) With the assistance of relevant ERO divisions responsible for data collection and analysis, evaluating on an ongoing basis information collected from ENFORCE, Risk Classification Assessment (RCA) and other relevant ICE information technology systems regarding detained alien parents or legal guardians and sharing with FODs and Field POCs, on an ongoing basis, relevant information about detained alien parents and legal guardians within each AOR.

   c) Assisting FODs and Field POCs in utilizing information about detained alien parents and legal guardians to help ensure compliance with this directive, including:

   i. the appropriate exercise of prosecutorial discretion with respect to detained aliens who are determined to be the primary caretaker of a minor child, or who are determined to be the parent or legal guardian of a USC or LPR child;
   ii. appropriate initial placement decisions and transfer decisions for detained alien parents or legal guardians;

    iii. the appropriate provision of escorted trips to family court or child welfare proceedings for detained alien parents or legal guardians;
    iv. appropriate visitation within ICE facilities; and
    v. appropriate efforts, to the extent practicable, to allow a detained alien parent or legal guardian to make provisions for their minor children, including through increased access to counsel, consular officials, family and dependency courts, child welfare authorities personnel, and/or family members or friends in order to arrange guardianship, or to obtain travel documents or otherwise make necessary travel arrangements, for his or her children.

d) Coordinating as necessary with other relevant ERO program offices, FODs, state or local family court or child welfare authority personnel, consular officials and others to facilitate the timely response to issues or complaints relating to the parental rights of detained aliens received by ICE.

e) Working as necessary with relevant ICE program offices and consular officials to facilitate the return to the United States of certain lawfully removed aliens by grant of parole for the sole purpose of participation in the termination of parental rights proceedings.

3) To the extent practicable, the FODs and the Field POCs shall utilize information collected from ENFORCE, RCA, and other relevant ICE information technology systems regarding detained alien parents and legal guardians to perform the functions described in Section 5.8(2)(c) of this Directive.

**5.9. Outreach.**

1) With support from other relevant ICE program offices and in coordination with U.S. Department of Homeland Security (DHS) entities and the U.S. Department of Health and Human Services' Administration for Children and Families, the ERO EAD or his or her designee shall work with representatives of family and dependency courts and child welfare authorities to develop methods for improving communication and cooperation between the immigration enforcement, family or dependency court, and child welfare systems.

2) In cooperation with non-governmental organization stakeholders, the ERO EAD or his or her designee shall ensure the dissemination to all over-72-hour facility law libraries relevant resource guides, including materials prepared by non-governmental organizations and reviewed by ICE, regarding dependency proceedings and the intersection of these proceedings with immigration enforcement and detention.

**5.10. Training.**

1) The Parental Rights Coordinator, in consultation with relevant ICE and DHS program offices – to include other relevant ERO program offices, the ICE Office of Training

and Development, Office of Detention Policy and Planning, and the DHS Office for Civil Rights and Civil Liberties – shall develop training materials to assist FODs, Field POCs, and other relevant Field Office personnel in the implementation of this Directive.

2) Training shall cover, at a minimum, the means by which ICE officers and personnel will safeguard the parental rights of aliens they encounter – through identification, placement, monitoring, accommodation, and removal – while fulfilling their obligation to enforce the immigration laws.

**6. Recordkeeping.** None.

**7. Authorities/References.**

**7.1.** INA § 212(d)(5), 8 U.S.C. § 1182(d)(5).

**7.2.** 8 Code of Federal Regulations (CFR) §212.5

**7.3.** ICE Policy 10075.1, Exercising Prosecutorial Discretion Consistent with the Civil Immigration Enforcement Priorities of the Agency for the Apprehension, Detention, and Removal of Aliens (June 17, 2011).

**7.4.** ICE Policy 10072.1, Civil Immigration Enforcement: Priorities for the Apprehension, Detention, and Removal of Aliens (March 2, 2011).

**7.5.** 2011 Performance-Based National Detention Standard, "5.2 Trips for Non-medical Emergencies."

**7.6.** ICE Policy 11022.1, Detainee Transfers (January 4, 2012).

**8. Attachments.**

**8.1.** Detainee Transfer Checklist (updated).

**9. No Private Right.** Notwithstanding the provisions of this Directive, ICE retains its discretion to remove or detain any alien to the extent permitted by law, irrespective of an alien's pending family court or child welfare proceeding. These guidelines and priorities are not intended to, do not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter.

John Sandweg
Acting Director
U.S. Immigration and Customs Enforcement