IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| **ARELI VEGA REYNA** as next friend of J.F.G., a minor; K.G., a minor; J.D.V., a minor and J.D.V., a minor; | )<br>)<br>)<br>) |
| *Plaintiffs*, | )<br>) |
| and | )<br>) |
| **MACARIO DIAZ MORALES,** | ) Civ. No.: 1:17-cv-01192-LO-TCB |
| *Petitioner/Plaintiff*, | )<br>)<br>) |
| and | )<br>) |
| **KAREN VITELA** as next friend of M.V.R.C., a minor; | )<br>)<br>) |
| *Plaintiff*, | ) |
| and | )<br>) |
| **ADELA MEJIA** as next friend of K.D.R.M., a minor; | )<br>)<br>) |
| *Plaintiff*, | ) |
| and | )<br>) |
| **HUMBERTO RAMOS RAYGOZA** | )<br>) |
| *Petitioner/Plaintiff*, | )<br>) |
| on behalf of themselves and others similarly situated, | )<br>)<br>) |
| v. | )<br>) |
| **RUSSELL HOTT,** in his official capacity as Director of the Immigration and Customs Enforcement Virginia Field Office; **THOMAS HOMAN,** in his official capacity as Acting Director of the Department of Homeland Security; **ELAINE DUKE,** in her official | )<br>)<br>)<br>)<br>)<br>)<br>) |

1

| | |
|---|---|
| capacity as Acting Secretary of the Department of Homeland Security; | ) ) ) |
| *Defendants/Respondents*. | ) ) ) |

**FIRST AMENDED CLASS ACTION COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF AND
28 U.S.C. § 2241 PETITION FOR A WRIT OF HABEAS CORPUS**

1. The Plaintiffs bring this case on behalf of themselves and similarly situated individuals to stop the Defendants, all federal immigration officials, from indiscriminately ripping families apart by abruptly and suddenly transferring detained immigrant parents without regard for their or their children's rights to family unity and due process of law.

2. Immigration and Customs Enforcement (ICE) frequently transfers detainees among its detention facilities. ICE usually gives no warning to detainees, their families, or their attorneys when such a transfer will take place.

3. Despite written ICE policies establishing a preference for not transferring individuals whose families reside in the geographic area, ICE typically transports detainees to different states or across the country where additional ICE detention facilities exist, usually in remote areas, far away from their families and without regard to their parent-child relationships.

4. Written ICE policies also explicitly prohibit informing detainees and their families of a pending transfer out of Virginia. These policies are constitutionally insufficient because they prohibit notice and do not provide an opportunity to be heard regarding an interest in family unity to the parent or child prior to a transfer.

5. One tragic effect of such transfers is separating detainees from their children and making it impossible for children to have access to their parents or to visit them.

6. Many of the children affected are United States citizens.

7. Plaintiff Macario Diaz Morales and his minor children filed this case on October 20, 2017 to stop his transfer from the Farmville Detention Center in Virginia, where he was being held, to Texas, without any notice to his children or opportunity for any party to be heard.

8. This case also arises out of the violation of Plaintiff Humberto Ramos Raygoza's constitutional right to family unity and the rights of his minor U.S. citizen children, Plaintiffs M.V.R.C. and K.D.R.M. when ICE abruptly and suddenly transferred him from Virginia to Texas with no notice or opportunity for any party to be heard.

**JURISDICTION AND VENUE**

9. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 2201(a).

10. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) and §1391(e)(1). A substantial part of the events or omissions giving rise to this action occurred in this district and Plaintiffs reside in this district. Defendant Russell Hott has his principal place of business in this district. The other Defendants in this civil action are agencies of the United States or cabinet secretaries of the United States.

**PARTIES**

11. Plaintiff J.F.G. is a 17-year-old U.S. citizen and resident of Alexandria, Virginia. He is the step-son of Macario Diaz Morales. He sues by his mother and next friend Areli Vega Reyna.

12. Plaintiff K.G. is a 16-year-old U.S. citizen and resident of Alexandria, Virginia. He is the step-son of Macario Diaz Morales. He sues by his mother and next friend Areli Vega Reyna.

13. Plaintiff J.D.V.is a 10-year-old U.S. citizen and resident of Alexandria Virginia. He is the son of Macario Diaz Morales. He sues by his mother and next friend Areli Vega Reyna.

14. Plaintiff J.D.V. is a nine-year-old U.S. citizen and resident of Alexandria, Virginia. He is the son of Macario Diaz Morales. He sues by his mother and next friend Areli Vega Reyna.

15. Plaintiff/petitioner Macario Diaz Morales is a resident of Alexandria, Virginia. On September 13, 2017, he was arrested by ICE on the charges that he is alleged to be present in the United States without inspection or admission, and was transported to the Farmville detention center. At the time the Complaint in this matter [ECF No. 1] was filed, ICE was detaining him at the Farmville Detention Center in Virginia, pursuant to 8 U.S.C. § 1226(a), because he had neither a final order of removal nor a criminal conviction that would render him subject to mandatory detention. On November 1, 2017, he was released from Farmville Detention Center pursuant to a bond ordered by an Immigration Judge. He is the natural father of the minor plaintiffs, J.F.G., K.G., J.D.V., and J.D.V., and he lived in family unity with them prior to his arrest by ICE.

16. Plaintiff M.V.R.C. is a four-month-old U.S. citizen and resident of Woodbridge, Virginia. She is the daughter of Humberto Ramos Raygoza. She sues by her next friend and cousin, Karen Vitela.

17. Plaintiff K.D.R.M. is a two-year-old U.S. citizen and resident of Woodbridge, Virginia. He is the son of Humberto Ramos Raygoza. He sues by his next friend and mother, Adela Mejia.

18. Plaintiff/petitioner Humberto Ramos Raygoza is a resident of Woodbridge, Virginia. On or about September 21, 2017, he was arrested by ICE on the charge that he is alleged to be present in the United States without inspection or admission, and was transported to the Farmville Detention Center. On October 21, 2017, without notice, he was transferred to the Polk County Detention Center in Livingston, Texas. He is being held pursuant to 8 U.S.C. § 1226(a), because he has neither a final order of removal, nor a criminal conviction that would render him subject to mandatory detention. He is the natural father of the minor plaintiffs M.V.R.C. and K.D.R.M. M.V.R.C. lives with him in his home, and he shares joint custody of Plaintiff K.D.R.M. with her mother.

19. Defendant Russell Hott is the Director of the Washington Field Office of the U.S. Immigration and Customs Enforcement (ICE), an agency of the Department of Homeland Security. He oversees decisions regarding all ICE detainees in Virginia. Upon information and belief, he or his designee is the individual responsible for deciding which ICE detainees in Virginia will be transferred to detention facilities in other states, and which will remain at Farmville. He is sued in his official capacity.

20. Defendant Thomas Homan is the Acting Director for U.S. Immigration and Customs Enforcement, an agency of the Department of Homeland Security. He is responsible for overseeing all decisions, activities, and actions undertaken by ICE. Upon information and belief, he or his designee is the individual responsible for deciding how

many ICE detainees in Virginia will be transferred to other states, and how many will remain at Farmville; and for setting ICE detention and transfer policies nationwide. He is sued in his official capacity.

21. Defendant Elaine C. Duke is the Acting Secretary of Homeland Security. She is responsible for overseeing the Department of Homeland Security, of which ICE is an agency. She is sued in her official capacity.

## LACK OF ADEQUATE REMEDY

22. No adequate remedy exists to prevent the unlawful transfer of class members out of their home state of Virginia, where their children live. ICE unlawfully transferred Plaintiff Humberto Ramos Raygoza out of Virginia. ICE planned to transfer Plaintiff Macario Diaz Morales out of Virginia and would have done so but for the emergency filing of this lawsuit. The immigration court that determines venue for immigration and bond proceedings has no jurisdiction to determine a detainee's physical placement in a given ICE detention facility. Upon information and belief, no process or procedure exists to challenge detainee transfer.

## FACTS

23. ICE routinely transfers detainees throughout the country to its various detention facilities, with the exceptions of nationals of El Salvador who are protected by the injunction in *Orantes-Hernandez v. Holder* (9th Cir. 2009). Upon information and belief, it does not provide prior notice of transfer to detainees, to their counsel, or to their families.

24. Upon information and belief, the director of ICE or his designees determine the number of detainees who must be transferred from a particular detention

facility. Upon information and belief, the Field Office Director determines which individual detainees will be transferred and which will not.

25. There is no procedure for challenging a decision to transfer a detainee, either by the detainee or by his family or counsel. Family members and counsel alike must check the detainee locator on ICE.gov to locate their loved one or client once they learn he or she has been transferred. This information is usually at least one day outdated.

26. ICE has two policies that guide detainee transfers. The first is ICE Policy 11022.1 on detainee transfer generally. This policy establishes that detainees will only be notified "immediately prior to transfer," and they may not alert their family or attorney until they reach their destination. It also establishes that ICE should not transfer detainees with immediate family in the geographic area where the detainee is held, unless deemed necessary by a Field Office Director.

27. The second policy is ICE Policy 11064.1, protecting parental interests of detainees. This policy establishes a preference for not transferring parents of minor U.S. citizens and legal permanent residents out of the geographic area, but allows for various exceptions, and ultimately places the matter at the sole discretion of ICE.

28. Notwithstanding its own policies, upon information and belief, ICE routinely transfers parents of U.S. citizens and legal permanent residents out of Virginia, completely disregarding detainees' and their children's family interests.

29. Upon information and belief, approximately 150 ICE detainees were transferred out of Virginia on October 21, 2017. Upon information and belief, these detainees were not afforded notice or an opportunity to be heard regarding their transfer.

It is very likely that many of these detainees had U.S. citizen children, and upon information and belief, none of these detainees' U.S. citizen children were given notice that their parent was being transferred out of Virginia or an opportunity to be heard on the matter.

30. Plaintiff Macario Diaz Morales, father of the minor Plaintiffs J.F.G., K.G., J.D.V., and J.D.V., believed he would be imminently transferred out of Virginia by ICE with this group of 150 detainees. This belief was based upon the fact that the Farmville detention center had suspended his commissary account, which usually means that a transfer is imminent. Mr. Diaz Morales was removed from this group of detainees and placed back in general detention at Farmville Detention Center on the morning of October 21, 2017, only as a result of his attorneys filing this action.

31. Mr. Diaz Morales was detained at Farmville Detention Center in Virginia from approximately September 13, 2017 until an immigration judge ordered his release on bond on November 1, 2017.

32. Humberto Ramos Raygoza, father of minor plaintiffs M.V.R.C. and K.D.R.M, was one of the approximately 150 individuals transferred from Farmville Detention Center in Farmville, Virginia to Polk County Detention Center in Livingston, Texas, on October 21, 2017. Neither he nor his U.S. citizen children were afforded notice or an opportunity to be heard regarding his transfer.

33. Mr. Ramos Raygoza was detained at Farmville Detention Center from approximately September 21, 2017 until October 21, 2017, at which time he was transferred to Polk County Detention Center in Texas, where he remains as of the filing of this Amended Complaint.

34. Since his transfer to Texas, Mr. Ramos Raygoza has not been able to receive visits from his children.

35. Mr. Ramos Raygoza has a pending hearing scheduled for November 7, 2017 at which time a bond motion is to be presented on his behalf. The Department of Homeland Security has already submitted a Motion to Change Venue to Houston, Texas, which was denied by the Arlington, Immigration Court.

36. Upon information and belief, ICE has a policy of rapidly transferring non-Salvadoran detainees in Virginia to detention centers in other states.

37. Upon information and belief, ICE maintains that it can re-detain an individual who has been released from ICE detention at any time, for any one of many reasons or for no reason at all, unless and until that individual has been granted immigration relief. The process of pursuing and obtaining immigration relief can take years.

***J.F.G.***

38. Plaintiff J.F.G. is a 17-year-old U.S. Citizen and resident of Alexandria, Virginia. He is the stepson of Macario Diaz Morales, who was detained in Virginia at the Farmville Detention Center.

39. Mr. Diaz Morales has cared for J.F.G. as a son since 2006, when J.F.G. was six years old. J.F.G. is a child with severe disabilities, including autism, and he is dependent upon both of his parents.

40. On September 13, 2017, Mr. Diaz Morales was arrested and detained by ICE at his home at 5:30 in the morning. J.F.G. was present and was seriously traumatized by the experience. J.F.G. frequently cried and asked for his stepfather. He visited his

father twice while his father was detained at Farmville Detention Center, with his mother, Ms. Vega Reyna, and his siblings.

*K.G.*

41. Plaintiff K.G. is a 16-year-old U.S. Citizen and resident of Alexandria, Virginia. He is the stepson of Macario Diaz Morales, who was detained in Virginia at the Farmville Detention Center.

42. Mr. Diaz Morales has cared for K.G. as a son since 2006, when K.G. was five years old.

43. On September 13, 2017, Mr. Diaz Morales was arrested and detained by ICE at his home at 5:30 in the morning. K.G. was present, observed the arrest, and was seriously traumatized by the experience.

44. K.G. visited his father on four occasions at Farmville Detention Center with his mother, Ms. Vega Reyna, and his siblings.

*J.D.V.*

45. Plaintiff J.D.V. is a 10-year-old U.S. Citizen and resident of Alexandria, Virginia. He is the son of Macario Diaz Morales, who was detained in Virginia at the Farmville Detention Center.

46. On September 13, 2017, Mr. Diaz Morales was arrested and detained by ICE at his home at 5:30 in the morning. J.D.V. was present, observed the arrest, and was seriously traumatized by the experience.

47. J.D.V. visited his father on four occasions at Farmville Detention Center with his mother, Ms. Reyna, and his siblings.

***J.D.V.***

48. J.D.V. is a nine-year-old U.S. Citizen and resident of Alexandria, Virginia. He is the son of Macario Diaz Morales, who was detained in Virginia at the Farmville Detention Center.

49. On September 13, 2017, Mr. Diaz Morales was arrested and detained by ICE at his home at 5:30 in the morning. J.D.V. was present, observed the arrest, and was seriously traumatized by the experience.

50. J.D.V. has visited his father on four occasions at Farmville Detention Center with his mother, Ms. Reyna, and siblings.

***M.V.R.C.***

51. Plaintiff, M.V.R.C. is a four-month-old U.S. Citizen and resident of Woodbridge, Virginia. She is the daughter of Humberto Ramos Raygoza, who is currently detained in Virginia at the Farmville Detention center.

52. Mr. Ramos Raygoza has cared for M.V.R.C. since her birth. M.V.R.C.'s mother and Mr. Ramos Raygoza's wife fears that M.V.R.C.'s inability to see her father will cause harm to their parent-child relationship and will deprive M.V.R.C. of access to her father during these vital early months in her development.

***K.D.R.M.***

53. Plaintiff K.D.R.M. is a two-year-old U.S. Citizen and resident of Woodbridge, Virginia. He is the son of Humberto Ramos Raygoza, who is currently detained in Texas at the Polk County Detention center.

54. Mr. Ramos Raygoza shares legal custody of K.D.R.M with his ex-partner. K.D.R.M. spends most weekends at the home of Mr. Ramos Raygoza, and prior to his

detention Mr. Ramos Raygoza provided for him financially each month. They have a strong and loving relationship.

55. K.D.R.M. has visited his father on one occasion at the Farmville Detention Center, with his mother, Adela Mejia, before Mr. Ramos Raygoza was transferred to Texas.

56. K.D.R.M. has been unable to visit his father since Mr. Ramos Raygoza was transferred to Texas, disrupting their parent-child relationship and Mr. Ramos Raygoza's ability to provide care and emotional support to his son, which is particularly important to his growth and development in the early years of life.

**CLASS ACTION ALLEGATIONS**

57. The classes that Plaintiffs seek to represent is defined as follows:

   a. <u>Detainees with U.S. Citizen Children class</u>: Plaintiffs Macario Diaz Morales and Humberto Ramos Raygoza seek to represent a class of all individuals who are in removal proceedings and who, as of October 20, 2017 or any time thereafter, are detained by U.S. Immigration and Customs Enforcement, under the authority of 8 U.S.C. § 1226, within the state of Virginia; and who have a U.S. citizen child also residing in the state of Virginia.

   b. <u>U.S. Citizen Children class</u>: Plaintiffs J.F.G., K.G., J.V.G., J.V.G., M.V.R.C., and K.D.R.M. seek to represent a class of all U.S. citizen children residing in the state of Virginia, and who, as of October 20, 2017 or any time thereafter, have a parent detained within the state of

> Virginia by U.S. Immigration and Customs Enforcement, under the authority of 8 U.S.C. § 1226.
>
> c. Petitioners reserve the right to amend the class definitions if discovery or further investigation reveals that the class should be expanded or otherwise modified.

58. Petitioners reserve the right to establish sub-classes as appropriate.

59. This action is brought and properly may be maintained as a class action under Fed. R. Civ. P. 23(a)(1)-(4).

60. <u>Numerosity</u>: The proposed classes are so numerous that joinder of all members is impracticable. While the precise size of the classes are unknown, Plaintiffs have reason to believe that each exceeds 150 people (and, as time goes by, will only grow). Upon information and belief, the average daily population of the main ICE detention center in Virginia is 300, and a great number of these have U.S.-born children. Nationwide, an estimated 7 percent of U.S. citizen children have an undocumented parent.

61. <u>Commonality</u>: There are multiple questions of law and fact common to the members of the proposed class. These common questions include whether Plaintiffs and the proposed class members have a constitutional right to family unity that, in turn, gives them a due process right to notice and the opportunity to be heard by ICE prior to ICE taking the decision as to whether or not to transfer a given detainee to an out-of-state detention facility.

62. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the proposed classes, as all are presently subject to transfer by ICE to an out-of-state facility without

13

notice or the opportunity to be heard regarding the effect of a transfer on their constitutionally protected right to family unity.

63. <u>Adequacy</u>: Plaintiffs will fairly and adequately protect the interests of the proposed classes. Plaintiffs' claims are identical to the members of the proposed classes, they have no relevant conflicts of interest with other members of the proposed classes, and they have retained competent counsel experienced in class-action and immigration law.

64. This action is brought and properly may be maintained as a class action under Federal Rule 23(b)(1), (b)(2), or (b)(3).

65. Separate actions by individual class members would create a risk of inconsistent or varying adjudications regarding the proposed class members' common legal question: whether there is a constitutional due process right to notice and an opportunity to be heard, prior to the ICE transferring the parent of a U.S.-citizen child to an out-of-state detention facility.

66. The U.S. government presently takes the position that no such right exists, and maintains no procedures by which any class members could seek to exert such a right. Thus, Defendants have acted or refused to act on grounds that apply generally to the proposed class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the proposed class as a whole.

67. Common questions of law or fact predominate over questions affecting only individual members, and a class action is thus superior to other available methods for fairly and efficiently adjudicating the controversy. Individual class members do not have a strong interest in bringing individual lawsuits; even if individual class members

had the resources to do so, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties, and to the court. Defendants have engaged in a common course of conduct, and the class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all class members' common claims in a single forum.

**FIRST CAUSE OF ACTION**
**Substantive Due Process**

68. Plaintiffs incorporate by reference the allegations in paragraphs 1-67.

69. The Due Process clause of the constitution protects U.S. Citizens and immigrants who are physically present in the United States.

70. ICE's policies and actions, as set forth above, violate the substantive due process right to family unity of Plaintiff Macario Diaz Morales and Plaintiff Humberto Ramos Raygoza (and all those similarly situated) by transferring them away from their children such that it prevents them from maintaining family unity with their children, as guaranteed by the Fifth Amendment to the U.S. Constitution.

71. ICE's policies and actions, as set forth above, violate the substantive due process right to family unity of Plaintiffs J.F.G., K.G., J.D.V., J.D.V., M.V.R.C., and K.D.R.M. (and all others similarly situated) by transferring their parent to a location that prevents them from maintaining family unity with their parent, guaranteed by the Fifth Amendment to the U.S. Constitution.

**SECOND CAUSE OF ACTION**
**Procedural Due Process**

72. Plaintiffs incorporate by reference the allegations in paragraphs 1-71.

73. The Due Process clause of the Constitution protects U.S. Citizens and immigrants who are physically present in the United States, and requires notice and opportunity to be heard before the government denies an important liberty or property right.

74. ICE's policies and actions, as set forth above, violate the procedural due process right to notice and an opportunity to be heard of Plaintiff Diaz Morales and Plaintiff Ramos Raygoza (and all others similarly situated) prior to transferring a parent away from his or her child, preventing family unity between parent and child, as guaranteed by the Fifth Amendment to the U.S. Constitution.

75. ICE's policies and actions, as set forth above, violate the procedural due process right to notice and an opportunity to be heard of Plaintiffs J.F.G., K.G., J.D.V., J.D.V., M.V.R.C., and K.D.R.M. (and all others similarly situated) prior to his or her parent being transferred away from a child, preventing family unity between parent and child, as guaranteed by the Fifth Amendment to the U.S. Constitution.

**THIRD CAUSE OF ACTION**
**Habeas Corpus**

76. Plaintiffs allege and incorporate by reference Paragraphs 1 through 75 above.

77. Respondents transferred Petitioner Ramos Raygoza to a detention center outside of Virginia without first providing him and his minor U.S. citizen children notice and an opportunity to be heard regarding the transfer. Respondents' detention of Petitioner Ramos Raygoza is therefore in violation of the Constitution, rendering it unlawful, and a writ of habeas corpus should issue.

78. Respondents are detaining the plaintiff class members and have subjected them to transfer, or may in the future subject them to transfer, without giving them or their U.S. citizen children notice and an opportunity to be heard. This is in violation of the Constitution, rendering it unlawful, and therefore a writ of habeas corpus should issue as to each class member who has been so transferred without notice and an opportunity to be heard.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this Court provide the following relief:

79. Assume jurisdiction over this matter;

80. Declare unlawful defendants' policy and practice of transferring detainees with U.S. citizen children away from those children without adequate notice or an opportunity to be heard;

81. Declare unlawful Respondents' custody over any detainee class members who have been transferred out of Virginia without previously affording them and their children adequate notice and an opportunity to be heard, and issue a writ of habeas corpus as to each such class member;

82. Order defendants to give plaintiffs, and all class members, reasonable notice and a reasonable opportunity to be heard, prior to transferring them to a detention center outside of Virginia;

83. Award plaintiffs their costs and reasonable attorney's fees; and

84. Any other relief this Court deems just and proper.

Plaintiffs request a jury trial on all issues so triable.

Respectfully submitted,

LEGAL AID JUSTICE CENTER

By: _____/s/ Rebecca Ruth Wolozin_____ Date: 11/6/2017
Rebecca Ruth Wolozin (VSB No: 89690)
Simon Sandoval-Moshenberg (VSB No.: 70110)
Angela Ciolfi (VSB No.: 65337)
Sophia Gregg (VSB No.: 91582)
6066 Leesburg Pike #520
Falls Church, Virginia 22041
(703) 778-3450 / Fax: (703) 778-3454
becky@justice4all.org
simon@justice4all.org
angela@justice4all.org
sophia@justice4all.org
*Counsel for the Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on November 6, 2017, I electronically filed the foregoing Memorandum of Law in Support of Plaintiffs' Motion for Class Certification with the Clerk of Court using the CM/ECF System. A true and correct copy will be served upon each defendant along with the summons and complaint in this action. In addition, a true and correct copy was on this date served by e-mail upon the following individuals:

>Dennis Barghaan
>U.S. Attorney's Office for the Eastern District of Virginia
>U.S. DEPARTMENT OF JUSTICE
>(DBarghaan@usa.doj.gov)

>Jeffrey Robbins
>Office of Immigration Litigation
>U.S. DEPARTMENT OF JUSTICE
>(Jeffrey.Robins@usdoj.gov)

Respectfully submitted,

Rebecca R. Wolozin, VSB No. 89690
LEGAL AID JUSTICE CENTER
6066 Leesburg Pike, Suite 520
Falls Church, VA 220041
(becky@justice4all.org)
 (703) 720-5606

By: __/s/ Rebecca R. Wolozin_____
Attorney for Plaintiffs