**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **ARELI VEGA REYNA,** *et al.***,** | * | |
| | * | |
| **Plaintiffs,** | * | **CASE NO. 1:17-CV-1192-LO-TCB** |
| | * | |
| **v.** | * | |
| | * | |
| **RUSSELL HOTT,** *et al.***,** | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**</u>

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and E.D. Va. R. 7(F), Defendants Russell Hott, et al. ("Defendants") respectfully submit the instant memorandum of law in support of their motion to dismiss with prejudice the Amended Complaint of Plaintiffs Areli Vega Reyna, et al. ("Plaintiffs").

## INTRODUCTION

The Plaintiffs in this case, immigration detainees and their children living in Virginia, ask this Court to dramatically expand substantive due process jurisprudence in a manner that other Article III courts have explicitly rejected, by holding that there exists a general due process right to family unity that precludes federal immigration authorities from transferring immigration detainees to facilities located outside of Virginia. The Court should dismiss Plaintiffs' claims because the Court lacks the subject matter jurisdiction to review such transfers. Defendants transfer immigration detainees in the exercise of discretion explicitly granted by statute, and the Court lacks jurisdiction to review that exercise of discretion over immigration matters.

Even if the Court finds that it has jurisdiction, dismissal would still be warranted because Defendants transfer immigration detainees as an essential part of their enforcement of the

immigration laws, so such transfers cannot shock the conscience, the threshold required for a finding of a substantive due process violation. Furthermore, the substantive due process right that Plaintiffs allege does not exist. Despite Plaintiffs' claims to the contrary, no court has ever recognized such a right, and several courts, confronted with the same claims raised here, have explicitly rejected the existence of this alleged substantive due process right. Even if a right to family unity in the immigration detention context did exist, Plaintiffs have failed to allege how the transfer of an immigration detainee over a state border would hinder it. And even if such transfers could, in certain cases, discourage family members from making in-person visits, Plaintiffs have failed to allege how family unity requires such visits. For any of the reasons set forth above and discussed in more detail below, the Court should dismiss Plaintiffs' substantive due process claim.

The Court should also dismiss Plaintiffs' procedural due process claim. Immigration detainees have no right to be detained in the same state as their family members, and Plaintiffs have no procedural due process right to notice and a hearing before being transferred.

Finally, to the extent the Court does not dismiss Plaintiffs' claims in their entirety, it should dismiss the claims brought by Plaintiff Macario Diaz Morales ("Diaz Morales"), his children, and stepchildren. Diaz Morales has been released from immigration detention, so claims related to his detention are moot.

## FACTS

Plaintiffs in this action consist of two aliens and their respective children. Diaz Morales alleges that on September 13, 2017, he was arrested by ICE as a removable alien who is present in the United States without inspection or admission. Immediately after his arrest, U.S. Immigration and Customs Enforcement ("ICE") transported him to the Farmville Detention

Center in Farmville, Virginia. He was being detained there when Plaintiffs filed their original Complaint in this matter on October 20, 2017. ECF No. 1. At that time, ICE was detaining Diaz Morales pursuant to 8 U.S.C. § 1226(a), as he was in removal proceedings but was not known to have any criminal or terrorist-related activity that would render him subject to mandatory detention under 8 U.S.C. § 1226(c). On November 1, 2017, he was released from Farmville Detention Center pursuant to a bond ordered by an immigration judge. Am. Compl. ¶ 15.

Plaintiffs allege that minor Plaintiff J.D.V. is Diaz Morales's 10-year-old U.S.-citizen son, that the second minor Plaintiff identified as J.D.V. is Diaz Morales's nine-year-old U.S.-citizen son, and that minor Plaintiffs J.F.G. and K.G. are Diaz Morales's U.S.-citizen stepchildren. Plaintiffs J.D.V., J.F.G., and K.G. sue by their mother and next friend, Areli Vega Reyna. Am. Compl. ¶¶ 11-14. Plaintiffs allege that prior to his arrest by ICE, Diaz Morales lived with J.D.V., J.F.G., and K.G. in Alexandria, Virginia. Id. ¶¶ 11-15.

Plaintiff Humberto Ramos Raygoza ("Ramos Raygoza") alleges that on September 21, 2017, he was arrested by ICE as a removable alien who is present in the United States without inspection or admission. Immediately after his arrest, ICE transported Raygoza to the Farmville Detention Center. Plaintiffs allege that on October 21, 2017, Raygoza was transferred without notice to the Polk County Detention Center in Livingston, Texas. He is being held there pursuant to 8 U.S.C. § 1226(a), because, like Diaz Morales, he is an alien in removal proceedings with no known criminal or terrorist background. Plaintiffs allege that Plaintiff M.V.R.C. is a U.S. citizen and the four-month-old daughter of Ramos Raygoza, and that Plaintiff K.D.R.M. is a U.S. citizen and Ramos Raygoza's two-year-old son. Am. Compl. ¶¶ 51, 53. Plaintiffs allege that prior to his arrest by ICE, Ramos Raygoza lived with M.V.R.C. in his home in Woodbridge, Virginia, that

Ramos Raygoza shares joint custody of K.D.R.M. with the child's mother, and that K.D.R.M. spent most weekends at Ramos Raygoza's home. *Id.* ¶¶ 18, 51, 54.

Plaintiffs allege that before Ramos Raygoza's transfer to the detention center in Texas, K.D.R.M. visited his father one time at the Farmville Detention Center. Am. Compl. ¶¶ 55. Plaintiffs do not allege that M.V.R.C. ever visited her father at Farmville. Plaintiffs allege, however, that since Ramos Raygoza's transfer to a detention facility in Texas, he "has not been able to receive visits from his children," thus harming his parent-child relationship with M.V.R.C. and K.D.R.M. and threatening to "deprive M.V.R.C. of access to her father during these vital early months in her development" while disrupting "Mr. Ramos Raygoza's ability to provide care and emotional support to his son, which is particularly important to his growth and development in the early years of life." Am. Compl. ¶ 34, 52, 56.

On October 20, 2017, the original complaint was filed in this action by the Plaintiffs, who consisted at that time solely of Diaz Morales and his children and stepchildren. Compl. ¶¶ 7-11. On October 20, 2017, Plaintiffs also filed an Emergency Application for a Temporary Restraining Order ("TRO Appl.). ECF No. 2. The Application sought an order enjoining Defendants from transferring Diaz Morales out of Virginia pending Plaintiffs' filing of a motion for a preliminary injunction enjoining Diaz Morales' transfer out of Virginia and the outcome of this litigation. TRO Appl. 6-7. On October 30, 2017, after Diaz Morales's release on immigration bond, Plaintiffs withdrew the TRO Application. ECF No. 7. Also on October 30, 2017, Plaintiffs filed a motion for class certification, which Plaintiffs later noticed for a hearing on February 2, 2017. ECF Nos. 8, 11.

On November 6, 2017, Plaintiffs filed an Amended Complaint. The Amended Complaint continues to name Diaz Morales and his children and stepchildren as Plaintiffs, despite his

release from immigration detention, but adds Ramos Raygoza and his children as additional Plaintiffs. Am. Compl. ¶¶ 11-18. The Amended Complaint contains class action allegations and seeks the certification of two classes: Diaz Morales and Ramos Raygoza seek to represent the first class, consisting of individuals in removal proceedings as of October 20, 2017, detained by ICE within Virginia pursuant to 8 U.S.C. § 1226, and who have a U.S. citizen child residing in Virginia. Am. Compl. ¶ 57(a). Plaintiffs J.F.G., K.G., J.V.G., J.V.G., M.V.R.C., and K.D.R.M. seek to represent another class of U.S. citizen children residing in the state of Virginia who, as of October 20, 2017, or any time thereafter, have a parent detained within Virginia by ICE pursuant to 8 U.S.C. § 1226. Id. ¶ 57(b).[1]

The Amended Complaint contains three causes of action. The first cause of action alleges that the transfer of detained aliens out of Virginia infringes on Plaintiffs' alleged substantive due process right to family unity by preventing the aliens and their U.S. citizen children from "maintaining family unity" with each other. Am. Compl. ¶¶ 69-71. The second cause of action alleges a violation of the Plaintiffs' alleged procedural due process right to notice and a hearing "prior to transferring a parent away from his or her child, preventing family unity between parent and child." Id. ¶¶ 73-75. The third cause of action seeks habeas relief for Ramos Raygoza and any class members who were transferred without giving them or their U.S. citizen children notice and hearing. Id. ¶¶ 77-78.

For relief, the Amended Complaint seeks an order that (1) declares unlawful any transfer of detainees with U.S. citizen children without adequate notice or a hearing; (2) declares

---

[1] Undersigned counsel has received information indicating that on November 8, 2017, Ramos Raygoza was released on bond from immigration detention but has not yet obtained documentation confirming that release. As discussed below at note 7, Ramos Raygoza's release moots his and his children's claims and requires their dismissal from this action.

unlawful the detention of any class member transferred out of Virginia without giving them and

their children adequate notice and a hearing and to that grants a writ of habeas corpus to such

class members; (3) directs Defendants to give Plaintiffs and class members reasonable notice and

hearing prior to transferring them to a detention center outside of Virginia; and (4) awards

Plaintiffs costs and attorney's fees.[2] Am. Compl. ¶¶ 79-84.

**ARGUMENT**

The Court, as an initial matter, lacks the jurisdiction to consider Plaintiffs' demands

relating to the place of his detention. The Immigration and Nationality Act ("INA") grants the

Executive the discretion to determine where to detain aliens during their removal proceedings,

and the INA also precludes court review of such exercises of discretion. The Court should,

therefore, dismiss this claim for lack of jurisdiction.

If the Court finds jurisdiction to consider Plaintiffs' due process claims, it should reject

them for failure to state a claim. An immigration detainee has no substantive due process to

family visitation or to be detained in a facility that facilitates, to a degree that Plaintiffs find

acceptable, family visitation. Although Plaintiffs cite the due process right to family unity, the

Fourth Circuit has rejected such a due process right generally in the removal process, of which

detention is a part. *See Gallanosa by Gallanosa v. United States*, 785 F.2d 116, 120 (4th Cir.

1986). In addition, the First Circuit has specifically rejected the notion of a due process right to

family visitation in immigration detention. *See Aguilar v. U.S. Immigr. & Customs Enforcement*,

510 F.3d 1, 22 (1st Cir. 2007). At the same time, the Supreme Court has rejected an analogous

---

[2]  Attorney's fees in this case are available only pursuant to the Equal Access to Justice Act
("EAJA"). Under the EAJA, a request for attorney's fees may be made only by a prevailing party
and only after a final judgment has issued. 28 U.S.C. § 2412; *see Scarborough v. Principi*, 541
U.S. 401, 405 (2004).  Because the Court has not issued a final judgment in Plaintiffs' favor, their
request for fees and costs is premature.

claim of due process rights to family visitation among criminal detainees that should inform the resolution of this case. *See Olim v. Wakinekona*, 461 U.S. 238, 247–48 & n.8 (1983). If any substantive due process right to family visitation exists, Plaintiffs have failed to allege how the transfer of aliens across a state border harms family unity. They have also failed to allege that such an interest can be satisfied only by in-person visits, rather than telephone or video-conference. Finally, because no due process right exists to in-person family visits, and because no statute, regulation, or policy controls the placement of aliens in detention facilities, Plaintiffs have no procedural due process right to notice and a hearing before they are transferred.

## I.     Standard of Review

### A.     Federal Rule 12(b)(1)

Federal Rule 12(b)(1) serves as the appropriate vehicle to challenge the court's subject matter jurisdiction in a particular matter. *See, e.g.*, *Coulter v. United States*, 256 F. Supp. 2d 484, 486 n.3 (E.D. Va. 2003). The plaintiff bears the burden of establishing the court's subject matter jurisdiction, and although this Court may utilize the allegations contained within the four corners of a plaintiff's complaint as evidence in determining whether it possesses jurisdiction over a dispute, it may also consider other evidence outside the pleadings if necessary. *See Richmond, Fredericksburg & Potomac R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). If the Court determines that it lacks subject matter jurisdiction, dismissal is the only proper outcome. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998).

### B.     Federal Rule 12(b)(6)

In adjudicating a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must determine whether a complaint fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Although a court must accept as true all well-pled factual allegations in a complaint, it need not credit allegations that are merely conclusory. *See Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). As the Supreme Court has explained, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* This is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*. Where the well-pleaded facts are "merely consistent with a defendant's liability" or "mere possibility of misconduct," the complaint fails to state of claim for relief that is plausible on its face, and the complaint must be dismissed. *Id.* at 678-79.

## II. The Court lacks jurisdiction to consider Plaintiffs' claims.

The Court should dismiss this action because the INA precludes judicial review of discretionary immigration decisions, such as the transfer of immigration detainees, the disputed issue in this case. The Fourth Circuit, along with several other circuits, has held that the Executive possesses the discretion granted by statute to determine the place of confinement for aliens subject to removal orders are within the discretion of the Executive. *See Gandarillas-Zambrana v. Bd. of Immigr. Appeals*, 44 F.3d 1251, 1256 (4th Cir. 1995) (holding that Executive "necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another.") (internal citations omitted); *see also Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from" statute); *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1440 (9th Cir. 1986) (holding that Executive "has the authority, conferred by statute, to choose the location for detention and to transfer aliens to that location"), *as amended*, 807 F.2d 769 (1987); *Wood v. United States*, 175 F. App'x 419, 420 (2d Cir. 2006) (holding that Executive "in

the exercise of his statutory discretion in light of the available facilities, determined to hold Wood in an Arizona detention center. The Attorney General was not required to detain Wood in a particular state").[3] Although *Gandarillas-Zambrana* and *Committee of Central American Refugees* referred to the statutory authority for the Executive to decide on the location of immigration detention as arising from 8 U.S.C. § 1252(c), that statutory authority has been transferred to 8 U.S.C. § 1231(g)(1), the statute cited by *Wood* and relevant to the Plaintiffs now. *See Wood*, 175 F. App'x at 420; Pub. L. 104-208, Div. C, Title III, §§ 305(a)(3), 110 Stat. 3009 (1996); *compare also* 8 U.S.C. § 1252(c) (West 1994) *with* 8 U.S.C. § 1231(g)(1). This technical statutory modification has no bearing on the issues here, or the applicability of the above-cited authority to the instant claims.

The INA provision restricting judicial review of the Executive's discretionary determinations precludes this Court from reviewing ICE's transfers of the Plaintiffs and putative class members. *See* 8 U.S.C. § 1252(a)(2)(B)(ii).[4] That statute provides that no court has jurisdiction to review any decision or action the Attorney General has discretion to make "under this subchapter" except for "the granting of relief under section 1158(a)." "[T]his subchapter,"

---

[3] *Gandarillas-Zambrana* discussed the discretion vested in the Immigration and Naturalization Service ("INS") to decide on detention location. The Homeland Security Act of 2002 abolished the INS, an agency of the Department of Justice, and transferred its immigration enforcement functions to the DHS, a Defendant in this action. *See Quitanilla v. Holder*, 758 F.3d 570, 572 n.3 (4th Cir. 2014). In addition, *Van Dinh*, *Committee of Central American Refugees* and *Wood* discuss the Executive discretion as vested in the Attorney General. After the enactment of the Homeland Security Act, statutory references to the Attorney General's immigration enforcement authority are deemed to refer to the Secretary of Homeland Security, who has assumed responsibility for such functions. *See* 6 U.S.C. §§ 251(2), 557.

[4] Section 1252(a)(2)(B)(ii) provides as follows:
> Notwithstanding any other provision of law, no court shall have jurisdiction to review ... (ii) any other decision or action of the Attorney General the authority for which is specified under this subchapter to be in the discretion of the Attorney General, other than the granting of relief under section 1158(a) of this title.

which is subchapter II of Chapter 12 of Title 8, covers sections 1151–1378, including Section 1231, the provision that grants DHS the authority to transfer aliens at its discretion. Thus, the literal terms of Section 1231 and Section 1252(a)(2)(B)(ii) preclude this Court from reviewing DHS's exercise of discretion in transferring Plaintiffs and putative class members, as at least one circuit court and numerous district courts have found. *See Van Dinh*, 197 F.3d at 433-34; *Zheng v. Decker*, No. 14-cv-4663 (MHD), 2014 WL 7190993, at *15-16 (S.D.N.Y. Dec. 12, 2014) (citing Sections 1231(g) and 1252(a)(2)(B) to find lack of jurisdiction to review transfer of immigration detainee); *Avramenkov v. I.N.S.*, 99 F. Supp. 2d 210, 213–15 (D. Conn. 2000) (holding that due to discretionary review bar of 8 U.S.C. § 1252(a)(2)(B)(ii) "the court lacks jurisdiction to prevent the INS from transferring the Petitioner to a federal detention facility in Oakdale, Louisiana."); *Earle v. Copes*, No. 2:05-CV-1614, 2005 WL 2999149, at *1 (W.D. La. Nov. 8, 2005) ("Decisions regarding the place of confinement for aliens subject to removal orders are within the discretion of the Attorney General and not subject to judicial review."). The Court should follow these authorities, find that 8 U.S.C. § 1252(a)(2)(B)(ii) eliminates its subject matter jurisdiction to consider Plaintiffs' challenge to DHS's discretionary determinations relating to the place of detention, and dismiss this case. *See* Fed. R. Civ. P. 12(b)(1), 12(h)(3).

**III.    Plaintiffs have no substantive due process right to in-state immigration detention.**

If the Court were to find the subject matter jurisdiction to consider Plaintiffs' claims, it should dismiss Plaintiffs' substantive due process claim pursuant to Federal Rule 12(b)(6), because that claim is premised on the legal proposition that aliens have a substantive due process right to remain in immigration detention within Virginia, where their children live. No such right exists. Even if it did, Plaintiffs have failed to establish that the transfer of immigration detainees across a state border infringes on that right. Plaintiffs have also failed to establish that their alleged right to family unity requires in-person visits.

## A. Principles of substantive due process.

"[S]ubstantive due process prevents the government from engaging in conduct that shocks the conscience . . . or interferes with rights implicit in the concept of ordered liberty." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)) (internal quotation marks omitted). The protection of substantive due process is narrow and covers only state action which is "so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Rucker v. Harford County*, 946 F.2d 278, 281 (4th Cir. 1991). Courts must be "'reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this uncharted area are scarce and open-ended.'" *Washington v. Glucksberg,* 521 U.S. 702, 720 (1997) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992)). Thus, courts should "exercise the utmost care whenever [they] are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of [judges]." *Id.* (internal quotations and citations omitted); *see also Lewis*, 523 U.S. at 842 (Supreme Court noting that it has "always been reluctant to expand the concept of substantive due process") (internal quotations and citations omitted).

Depending upon whether the claimed violation is by executive act or legislative enactment, different methods of judicial analysis are appropriate. *See Lewis*, 523 U.S. at 846. This is so because there are different "criteria" for determining whether executive acts and legislative enactments are "fatally arbitrary," an essential element of any substantive due process claim. *Id.* In executive action cases, the issue of fatal arbitrariness should be addressed as a "threshold question," asking whether the challenged conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Id.* at 847 n. 8. If it does not

meet that test, the claim fails on that account, with no need to inquire into the nature of the asserted liberty interest. If it does meet the threshold test of culpability, the court must consider the nature of the asserted interest, specifically the level of protection to which it is entitled. *See id.* If the claimed violation is by legislative enactment (either facially or as applied), analysis proceeds by a different two-step process that does not involve any threshold "conscience-shocking" inquiry. The first step in this process is to determine whether the claimed violation involves one of "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition," *Glucksberg*, 521 U.S. at 720–21 (internal citations and quotations omitted), and "implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Id.* (internal citations and quotations omitted).

The Supreme Court has elaborated on the kind of executive conduct that can be said to "shock the conscience," to the degree that it is "fatally arbitrary in the constitutional sense." Such conduct involves "abusing [executive] power, or employing it as an instrument of oppression." *Collins,* 503 U.S. at 126 (quotation omitted). More objectively, it is conduct more blameworthy than simple negligence, which never can support a claim of substantive due process violation by executive act. *See Lewis,* 523 U.S. at 849. While intentional conduct is that "most likely" to meet the test, that alone will not suffice; the conduct must be "intended to injure in some way *unjustifiable by any government interest.*" *Id.* (emphasis added).

Two other considerations should guide the Court in conducting the "fundamental interest" inquiry in this case. First, when assessing whether the executive action at issue here meets this stringent test, courts should look for benchmarks in the way executive officials, and courts reviewing their actions, have responded to comparable situations. *See id.* at 847 n.8 (suggesting importance to shocks-the-conscience inquiry of "an understanding of traditional

executive behavior, of contemporary practice, and of the standards of blame generally applied to them"); *Hawkins v. Freeman*, 195 F.3d 732, 742 (4th Cir. 1999). Second, the inquiry must be conducted on the basis of a "careful description of the asserted fundamental liberty interest." *Glucksberg*, 521 U.S. at 720 (quotation omitted). By this means, the "Nation's history, legal traditions, and practices . . . provide the crucial 'guideposts for responsible decisionmaking,'" that would be threatened by analyzing the claimed right at too general a level. *Id.* at 721 (quoting *Collins*, 503 U.S. at 125); *Hawkins v. Freeman*, 195 F.3d 732, 739 (4th Cir. 1999). Thus, "[d]eliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Lewis*, 523 U.S. at 849, 850 (citations omitted).

### B.     Plaintiffs' transfers do not shock the conscience.

Here, Plaintiffs claim that Defendants' transfer of aliens to out-of-state detention facilities infringes on Plaintiffs' substantive due process right to family unity. While Defendants transferred Plaintiffs pursuant to a statute granting Defendants the discretion to take such action, *see supra*, Argument Section II, Plaintiffs challenge the executive exercise of discretion rather than the statute empowering it. *See* Am. Compl. ¶ 70 (challenging "ICE's policies and actions"). Thus, for Plaintiffs' substantive due process claim to prevail, the Amended Complaint must demonstrate that the challenged action was so "extreme, egregious, or outrageously offensive" as to "shock the conscience." *Lewis*, 523 U.S. at 846, 847 n.8. The Amended Complaint fails to do so.

Plaintiffs cannot show that the out-of-state transfer of immigration detainees shocks the conscience because, as the First Circuit held in a case involving nearly identical claims, "the evenhanded enforcement of the immigration laws, in and of itself, cannot conceivably be held to

violate substantive due process." *See Aguilar*, 510 F.3d at 22 (citing *Payne-Barahona v. Gonzales*, 474 F.3d 1, 2 (1st Cir. 2007), and *de Robles v. Immigr. & Naturalization Serv.*, 485 F.2d 100, 102 (10th Cir. 1973)). That holding necessarily derives from the fact, long recognized by the Supreme Court, that immigration detention is not unjustifiable by any government interest but is, instead, an essential aspect of the Government's plenary power to control immigration. *See Demore v. Kim*, 538 U.S. 510, 523 (2003) (holding that "deportation proceedings 'would be vain if those accused could not be held in custody pending the inquiry into their true character'") (quoting *Wong Wing v. United States,* 163 U.S. 228, 235 (1896)); *see also Mathews v. Diaz*, 426 U.S. 67, 81 n.17 (1976) ("'[A]ny policy toward aliens is vitally and intricately interwoven with contemporaneous policies in regard to the conduct of foreign relations, the war power, and the maintenance of a republican form of government.'") (quoting *Harisiades v. Shaughnessy*, 342 U.S. 580, 588–589 (1952)). In affirming the plenary power of Congress over immigration, the Supreme Court has held that "Although Congress has tended to show 'a continuing and kindly concern . . . for the unity and the happiness of the immigrant family,' this has been a matter of legislative grace rather than fundamental right." *Kerry v. Din*, 135 S. Ct. 2128, 2136 (2015) (Scalia, J., plurality opinion) (internal citation omitted). Because ICE transfers aliens in immigration detention, including Plaintiffs, as part of the "evenhanded enforcement of the immigration laws" enacted as part of Congress's plenary power to regulate immigration, those transfers do not shock the conscience and do not constitute a substantive due process violation. *See Aguilar*, 510 F.3d at 22; *Lewis*, 523 U.S. at 849.

The approach of the Executive and courts in the comparable context of removals, which the Government also undertakes pursuant to its plenary power over immigration, further demonstrates that the transfers of detained aliens do not shock the conscience or otherwise

violate Plaintiffs' alleged substantive due process right to family unity. *See Lewis*, 523 U.S. at 847 n.8; *Hawkins*, 195 F.3d at 742. The removal to another country of an alien with U.S.-citizen children would likely impair that family's unity more than detention of an alien in another state would have on that alien's family unity. Nevertheless, "[t]he courts of appeals that have addressed this issue have uniformly held that deportation of the alien parents does not violate any constitutional rights of the citizen children." *Gallanosa*, 785 F.2d at 120 (collecting cases); *see also Gordon v. Mule*, 153 F. App'x 39, 42 (2d Cir. 2005) (citing Government's plenary power over immigration to reject claim that removal violates substantive due process right to family unity). These authorities demonstrate that in the analogous context of immigration removals, Executive actions that may incidentally prevent family unity by separating alien parents from their children do not violate substantive due process. Because immigration detention is an inherent part of the immigration removal process, *see Demore*, 538 U.S. at 523, any incidental separation of aliens from their children resulting from immigration detention also does not violate substantive due process.

In the equally comparable context of criminal detention, courts have also found that the out-of-state transfer of criminal inmates does not violate the alleged substantive due process right of the inmates or their families to family unity. Immigration detention arises in civil proceedings and is not a criminal sanction. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (noting, in a case stemming from a habeas petition challenging immigration detention, that "[t]he proceedings at issue here are civil, not criminal"). Nevertheless, as with removals of aliens from the United States, the interests of criminal detainees facing transfer helps establish that the transfer of the immigration detainees in this case does not shock the conscience and does not, therefore, violate their due process rights. *See Lewis*, 523 U.S. at 847 n.8; *Hawkins*, 195 F.3d at 742. In cases

where criminal detainees have argued that their transfers to out-of-state prisons violate their right to family unity by impeding visits from family members – the claim made by Plaintiffs here, Am. Compl. ¶¶ 69-71 – the Supreme Court and other courts have held that the interstate transfer of a criminal detainee does not violate any due process rights of the detainee, even if the transfer leaves the detainee separated hundreds of miles from his family. *See Olim*, 461 U.S. at 247–48 & n.8 (1983) (citing *Montanye v. Haymes*, 427 U.S. 236, 241 n.4 (1976)); *see also Newbold v. Stansberry*, No. 1:08CV1266 (LO/JPP), 2009 WL 86740, at *3 (E.D. Va. Jan. 12, 2009) (O'Grady, J.) (holding that "a prisoner has no due process interest in his placement at a particular prison, nor does the Constitution guarantee that the convicted prisoner will be placed in any particular prison. Nor does a prisoner have a constitutional right to receive visits from friends or family members.") (internal quotations and citations omitted), *aff'd*, 332 F. App'x 927 (4th Cir. 2009); *Lyons v. Clark*, 694 F. Supp. 184 (E.D. Va. 1988) (Ellis, J.) (rejecting challenge to transfer of criminal detainee after finding no liberty interest of criminal detainee "in receiving visits from family, friends and community groups"). The rejection of the claim that out-of-state transfers of criminal detainees violate their alleged substantive due process right to family unity suggests that the out-of-state transfer of immigration detainees does not violate Plaintiffs' alleged substantive due process rights to family unity in this case. *See Lewis*, 523 U.S. at 847 n.8; *Hawkins*, 195 F.3d at 742.

### C.    Plaintiffs cite an inapposite case to allege a substantive due process right to remain detained in Virginia – a right that does not exist.

Plaintiffs rely on an inapt case in an attempt to conjure a substantive due process right to family unity that would require their continued detention in Virginia. No such right exists, and the case that Plaintiffs rely upon does not support their claim to such a right. In their TRO Application, Plaintiffs cite *D.B. v. Cardall*, 826 F.3d 721 (4th Cir. 2016), to argue that the Fourth

Circuit has "recognized the fundamental right to family unity." TRO Appl. 2. Plaintiffs also rely on *Cardall* to argue that "deprivation of the care and comfort of one's children and one's parents is a fundamental interest protected by the due process requirements of the constitution. *Id.* (citing *Cardall*, 826 F.3d at 740).

But in comparing the interest recognized in *Cardall* to their own interests, Plaintiffs have failed to make a "careful description of the asserted fundamental liberty interest" in this case. *See Glucksberg*, 521 U.S. at 720. They have, instead, analyzed "the claimed right at too general a level." *Id.* at 721. Plaintiffs claim that in *Cardall*, the Fourth Circuit recognized the "fundamental right to family unity," a right allegedly broad enough to preclude the transfer of immigration detainees out of Virginia if their U.S. citizen children live in that state. TRO Appl. 2; Am. Compl. ¶¶ 69-71.

The right described in *Cardall*, however, was not so broad. Rather than recognizing a right to "family unity" that would preclude any state action that sent a parent over state lines from his children, *Cardall*, instead, recognized only "the interest of parents in the care, custody, and control of their children." *Cardall*, 826 F.3d at 740. In so doing, the Fourth Circuit examined whether the continued care, custody, and control of an unaccompanied alien child by the Office of Refugee Resettlement, an agency of the U.S. Department of Health and Human Services, violated the substantive due process right of the child's mother. *Id.* at 725. But in discussing the scope of the substantive due process right in question, *Cardall* never characterized it as broadly as the right to "family unity." *Cardall*, instead, found analogies to cases involving a statute infringing on parents' rights to decide who may visit their children, *id.* at 741 (citing *Troxel v. Granville*, 530 U.S. 57, 67 (2000)); a statute infringing on parents' rights to decide when their children may stop formal schooling, *id.* (citing *Pierce v. Soc'y of the Sisters of the Holy Names of*

*Jesus & Mary*, 268 U.S. 510 (1925)); a prohibition on the languages that may be taught to children, *id.* (citing *Meyer v. Nebraska*, 262 U.S. 390 (1923)); and a statute that allowed the children of unwed fathers to be declared dependent on the state absent a finding of unfitness. *Id.* (citing *Stanley v. Illinois*, 405 U.S. 645 (1972)).*Cardall*, thus, arose from cases involving "the rights of parents to make specific decisions concerning the upbringing of their children without government intrusion." *Lin v. United States*, No. CIV.A. 5:07-CV-26, 2007 WL 951618, at *5 (S.D. Tex. Mar. 28, 2007); *see also Aguilar*, 510 F.3d at 23 ("The petitioners' claims seem markedly different from those scenarios that courts heretofore have recognized under the rubric of family integrity. They have not alleged that the government has interfered permanently with their custodial rights.").

As such, *Cardall* should be read as recognizing only that narrow substantive due process right, not the much broader right that Plaintiffs claim now. *See Glucksberg*, 521 U.S. at 720. Only a "strained reading could distill from this caselaw a substantive due process right to 'family unity' in a general sense; that is, the right of family members to maintain their 'ongoing relationship[s] as a family unit' free from *any* government action that may incidentally disrupt family intimacy or proximity." *Lin*, 2007 WL 951618, at *5. In *Lin*, the court considered the claim that Plaintiffs raise here: that the out-of-state immigration detention of aliens violates their substantive due process "right to family unity." *Id.* at *1. Properly hesitant to expand substantive due process rights, *see Glucksberg*, 521 U.S. at 720, the *Lin* court found that cases involving governmental infringement on parental decision making created "no such right" of aliens to be detained near to their families. *See id.* Similarly, the First Circuit in *Aguilar* found that expanding the substantive due process right to prohibit the separation of aliens and the families over state lines "would risk turning every lawful detention or arrest of a parent into a substantive due

process claim." *Aguilar*, 510 F.3d at 22. If such a right did exist, "it is difficult to see why children would not also have a constitutional right to object to a parent being sent to prison or, during periods when the draft laws are in effect, to the conscription of a parent for prolonged and dangerous military service." *Payne-Barahona*, 474 F.3d at 3. No court has ever recognized so broad a right, which Plaintiffs essentially allege here. *See Aguilar*, 510 F.3d at 23 ("We have scoured the case law for any authority suggesting that claims similar to those asserted here are actionable under the substantive component of the Due Process Clause, and we have found none."). *Cardall* recognized no such right. The Court, therefore, has no basis to extend the doctrine of substantive due process to require aliens to be detained in the same state as their children. *See Glucksberg*, 521 U.S. at 720.

> **D.** **Family unity is not harmed merely by the transfer of aliens across state lines.**

Even if a substantive due process right did exist and did require the detention of alien parents near enough to their children to permit regular visits, Plaintiffs' complaints about ICE's "policy of rapidly transferring non-Salvadoran detainees in Virginia to detention centers in other states" fails to state a claim. Plaintiffs do not allege harm to family unity from the transfer of aliens over a certain distance. They conclusorily allege, instead, harm to family unity from the transfer of aliens outside of the state in which they were initially detained. Am. Compl. ¶¶ 36 ("ICE has a policy of rapidly transferring non-Salvadoran detainees in Virginia to detention centers in other states"), 70-71 ("ICE's policies and actions, as set forth above, violate the substantive due process right to family unity"); *see also id.* ¶ 22 ("No adequate remedy exists to prevent the unlawful transfer of class members out of their home state of Virginia."). But Plaintiffs have provided no non-conclusory allegation to the effect that the mere moving of an alien detainee over a state border harms family unity. Indeed, it is possible that transferring detained aliens across a state border may actually foster family unity by bringing detainees closer

to their families. Both Diaz Morales and Ramos Raygoza, for example, live in Northern Virginia, approximately 150 miles from Farmville Detention Center.[5] If they had been transferred from Farmville to an out-of-state detention center in Maryland, they might actually have been closer to their families. *See, e.g., Thakur v. Morton*, No. CIV.A. ELH-13-2050, 2013 WL 5964484, at *1 (D. Md. Nov. 7, 2013) (describing immigration detention at Howard County Detention Center in Jessup, Maryland, which is located approximately 40 miles from Alexandria).[6] Because Plaintiffs have failed to explain how the transfer of detained aliens across state lines, as opposed to over a certain distance, infringes on their alleged substantive due process right to family unity, the Court should dismiss their claims for failure to state a claim.

E. **Even if the transfer of aliens across state lines hinders in-person visits, Plaintiffs have failed to allege resultant harm to family unity.**

Even assuming that the transfer of an immigration detainee across state lines hinders in-person visits from the detainee's family, as Plaintiffs seem to imply, Am. Compl. ¶¶ 5, 34, 56, Plaintiffs have failed to allege how that alleged hindrance harms family unity. While Plaintiffs, naturally, might prefer in-person visits from family members, they have not explained why family unity requires it. Nor have they, conversely, alleged why family unity cannot be maintained through telephone calls or video conferencing between detained aliens and their children. Plaintiffs have not, after all, alleged that the detention centers holding immigration detainees lack facilities for them to contact their children through video conferencing or telephone calls. Plaintiffs allege that Ramos Raygoza's transfer to a detention facility in Texas

---

[5] Defendants ask the Court to take judicial notice of the approximate distances between Farmville and Woodbridge and Alexandria. *See United States v. Johnson*, 726 F.2d 1018, 1021 (4th Cir. 1984) (holding that "geographical information is especially appropriate for judicial notice").

[6] Defendants ask the Court to take judicial notice of the approximate distances between Jessup, Maryland, and Woodbridge and Alexandria, Virginia. *See Johnson*, 726 F.2d at 1021.

has disrupted his "ability to provide care and emotional support to his son." Am. Compl. ¶ 56. But other than this conclusory allegation – which this Court cannot credit in the Federal Rule 12 analysis – Plaintiffs' Amended Complaint lacks any allegation concerning how Ramos Raygoza was able "to provide care and emotional support to his son" from inside a detention facility in Farmville, Virginia, why his ability to do is lessened, by comparison, while he is detained in Texas, and why he cannot provide care and emotional support to his son through telephone calls or videoconference chats while he is detained there.

In light of that failure to allege harm from the lack of in-person visits, Plaintiffs have failed to state a plausible substantive due process claim, and the Court should dismiss this case. *See Polansky v. Wrenn*, No. 12–cv–105–PB, 2012 WL 2360536 (D.N.H. June 4, 2012) (dismissing claim after plaintiff failed to allege how lack of in-person contact visits from family and friends caused him "permanent and non-speculative harm").

## IV. Plaintiffs have no procedural due process right to notice and a hearing before transfer.

Because Plaintiffs have no due process right to detention in a specific location, they have no procedural due process right to notice and a hearing before being transferred. To establish a procedural due process claim, a plaintiff must prove that he possessed a protected liberty or property interest and that he was deprived of that interest without being afforded the process to which he was constitutionally entitled. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70 (1972). As established above, Plaintiffs have no protected interest in detention at a specific location or in a specific state. *See* Argument, *supra* Section III. Without any such recognized right, the transfer of a detainee without a hearing does not violate any recognized liberty interest. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976); *Montanye*, 427 U.S. at 243.

Since *Meachum* and *Montanye*, the Supreme Court has held that detention regulations, standing alone, can give rise to a protected liberty interest if they contain mandatory language and establish substantive predicates for transfers. *See Hewitt v. Helms*, 459 U.S. 460, 471 (1983). That line of cases, however, does not apply here. Here, Plaintiffs fail to allege that any statute or regulation establishes a right to notice or a hearing before ICE transfers an immigration detainee. Plaintiffs, in fact, concede that written ICE policies do the opposite insofar as they grant immigration officers the discretion to transfer detainees and "explicitly prohibit informing detainees and their families of a pending transfer out of Virginia." Am. Compl. ¶¶ 4, 26-27. Because Plaintiffs have neither an inherent due process right to notice and a hearing before transfer nor a right established by statute or regulation, the Court should dismiss Plaintiffs' claims to such notice and hearing.

## V. The claims of Diaz Morales and his children are moot and they should be dismissed from this case.

If the Court does not dismiss this entire action, it should dismiss Diaz Morales and his children and stepchildren as plaintiffs because their claims are moot. The Constitution limits the jurisdiction of federal courts to actual cases or controversies. U.S. Const. art. III, § 2. The controversy must be present at all stages of review. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 66 (1997). A case is moot if the petitioner received what he pleaded such that "a favorable judicial decision" cannot redress any "actual injury." *Spencer v. Kemna*, 523 U.S. 1, 7 (1998). "It is well-settled that a habeas corpus petition seeking release from immigration detention is moot when the petitioner is no longer held in detention." *Elnour v. Crawford*, No. 1:13CV923 JCC/TCB, 2013 WL 6571828, at *1 (E.D. Va. Dec. 13, 2013).

In this case, Diaz Morales and his children and stepchildren seek relief from the alleged harm of his immigration detention and transfer out of state. But Diaz Morales cannot be

transferred as an immigration detainee to another state because he is no longer an immigration detainee at all. Am. Compl. ¶ 15. After Diaz Morales's release, the Court is unable to grant Diaz Morales and his family any further relief that they seek in this Complaint. As such, their claims are moot, and they should be dismissed from this action. *See Spencer*, 523 U.S. at 7.[7]

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' substantive and procedural due process claims or, in the alternative, dismiss Plaintiffs Diaz Morales, his children, and his stepchildren as plaintiffs because their claims are moot.

---

[7] As discussed above at note 1, Ramos Raygoza appears to have been released from immigration detention. Just as Diaz Morales's release moots his and family's claims, Ramos Raygoza's release moots his and his children's claims, including his demand for a writ of habeas corpus at Count 3 of the Amended Complaint. *See Elnour*, 2013 WL 6571828, at *1. In their Reply Brief, Defendants intend to attach documentation evidencing Ramos Raygoza's release or, if they are unable to confirm Ramos Raygoza's release, to withdraw the argument relating to the mootness of Ramos Raygoza's claims.

Dated: November 29, 2017

Respectfully submitted,

CHAD A. READLER
Principal Deputy Assistant Attorney General
U.S. Department of Justice, Civil Division

DANA J. BOENTE
United States Attorney

WILLIAM C. PEACHEY
Director
Office of Immigration Ligation
District Court Section

JEFFREY S. ROBINS
Assistant Director

*/s/ Hans H. Chen*
HANS H. CHEN
Senior Litigation Counsel
JULIAN M. KURZ
Trial Attorney
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Washington, DC 20044
Telephone: (202) 305-4469
Fax: (202) 305-7000
hans.h.chen@usdoj.gov

DENNIS C. BARGHAAN, JR.
Deputy Chief, Civil Division
Assistant U.S. Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Telephone: (703) 299-3891
Fax: (703) 299-3983
dennis.barghaan@usdoj.gov

ATTORNEYS FOR DEFENDANTS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 29, 2017, I will file the foregoing document with the

Clerk of Court through the Court's ECF system, which will then send a notification of electronic

filing to counsel for all parties.

Dated: November 29, 2017

*/s/ Hans H. Chen*
HANS H. CHEN
Senior Litigation Counsel
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section

ATTORNEY FOR DEFENDANTS