**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| **ARELI VEGA REYNA et al.** ) | |
| ) | |
| *Plaintiffs* ) | |
| ) | |
| **v.** ) | **Civ. No.: 1:17-cv-01192-LO-TCB** |
| ) | |
| **RUSSELL HOTT et al.** ) | |
| ) | |
| *Defendants/Respondents.* ) | |

**PLAINTIFFS' RESPONSE MEMORANDUM IN OPPOSITION
TO RESPONDENTS' MOTION TO DISMISS**

**INTRODUCTION**

The family represents the foundational unit of society, and familial relationships are the most primal and essential of bonds within it. Long regarded as a fundamental liberty interest, the right to protection of the parent-child relationship is "far more precious" than any property right. *May v. Anderson*, 345 U.S. 528, 533 (1953). The United States Supreme Court and the Fourth Circuit Court of Appeals have declared that "perhaps the oldest of the fundamental liberty interests recognized by the Supreme Court [is] the interest of parents in the care, custody and control of their children." *D.B. v. Cardall*, 826 F.3d 721, 740 (4th Cir. 2016) (quoting *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality opinion)). Although the fundamental right to family unity presents itself in a myriad of ways, "the Court has recognized these connections by describing the varied rights as a unified whole . . . [under] the liberty protected the Due Process Clause." *Obergefell v. Hodges*, 135 S. Ct. 2584, 2594 (2015). This case is about the sanctity of Plaintiffs' parent-child relationships and the government's duty to preserve and protect them by ensuring due process of law.

1

The Defendants, all officials charged with overseeing or executing policies of the U.S.

Immigration and Customs Enforcement ("ICE"), are violating Plaintiffs' fundamental rights to

family unity by transferring parents away from their children without first affording all parties

adequate notice and an opportunity to be heard. Contrary to Defendants' claims that Plaintiffs are

asking for a drastic expansion of due process rights, Plaintiffs merely ask that ICE consider one

more factor, among the many they already take into account, to ensure that Plaintiffs' existing

and long-recognized fundamental constitutional rights are not violated. Their claims primarily

address the procedure, or lack thereof, for transferring detainees who are also parents, and its

impact on their right to family unity.

Plaintiffs do *not* seek to prevent ICE from deporting parents of U.S. citizen children who

are otherwise lawfully deportable; nor to prevent ICE from detaining parents of U.S. citizen

children who are otherwise lawfully detainable; nor to force ICE to automatically place any

detainee in any particular facility. Moreover, Plaintiffs do not ask this Court to "preclude[]

federal immigration authorities from transferring immigration detainees to facilities located

outside Virginia."  Defs.' Mem. in Supp. of Motion to Dismiss ("Defs.' Mem."), ECF No. 16 at

1. Plaintiffs merely seek to require ICE to afford U.S. citizen children and their parents basic due

process protections reasonably calculated to prevent families from being arbitrarily and

unnecessarily ripped apart when alternatives may be available. Plaintiffs do not seek to design or

prescribe that process.

This Court has jurisdiction to review these claims because the bar to judicial review

applies narrowly to those decisions specifically listed by the Immigration and Nationality Act

("INA") as being within the discretion of the Attorney General, and detainee transfer decisions

are not so listed. Furthermore, Plaintiffs bring constitutional challenges to ICE's decision-

making *process,* rather than the outcome of any individual decision by ICE. The claims are not moot because this Court is capable of providing meaningful relief, and because Plaintiffs remain in "custody": ICE may re-detain them at any time and for any reason during the pendency of their removal proceedings.

Finally, Plaintiffs have stated a claim for violations of both substantive and procedural due process based on their fundamental liberty right to family unity. The perfunctory severing of parent-child contact caused by the sudden transfer of parent-detainees, with no notice or hearing violates all notions of basic due process. The Court should deny Defendants' Motion to Dismiss.

## STATEMENT OF FACTS

Plaintiffs Macario Diaz Morales and Humberto Ramos Raygoza were detained by ICE in September 2017 pursuant to 8 U.S.C. § 1226(a) at Farmville Detention Center ("FDC") in Farmville, Virginia. Am. Compl. ¶¶ 15, 18., ECF No. 12. Neither were subject to a final order of removal, so they may ultimately remain in the United States with their families in the long term. *Id.* Mr. Diaz Morales and Mr. Ramos Raygoza, and the class they seek to represent, were detained pending decisions by the immigration court on whether they would be removed from the United States, or whether they would be granted relief and be permitted to remain. *Id.*

Mr. Diaz Morales and Mr. Ramos Raygoza are both the fathers of U.S. citizen children. Mr. Diaz Morales' children, J.F.G., K.G., J.D.V. and J.D.V., and Mr. Ramos Raygoza's children, M.V.R.C. and K.D.R.M. are also plaintiffs in this case, suing by their next friends. Am. Compl. Each of their children had a close and loving parent-child relationship with his or her father. *Id.* at ¶¶39-40, 42-44, 46-47, 49-50, 52, 54-56.   Each of their children allege substantial harm to their family unity rights with their fathers. *Id.* at ¶71, 75.

ICE detained Mr. Diaz Morales for approximately six weeks until he was released on

bond by order of the immigration judge. *Id.* at ¶15. During his detention, ICE suspended his commissary account, which made him believe he would be transferred out of Virginia. *Id.* at ¶30. ICE removed him from the group of detainees to be transferred returned him to general detention on the morning of October 21, 2017, only as a result of filing this action. *Id.* Each of his children visited him multiple times while he was detained at FDC. *Id.* at ¶¶40, 44, 47, 50.

Mr. Ramos Raygoza was detained at FDC for approximately four weeks, and was then transferred to Polk County Detention Center in Livingston, Texas on October 21, 2017. *Id.* at ¶33. His two children are very young, aged four months and two years. *Id.* at ¶51, 53. His son, K.D.R.M. visited him while he was detained at FDC. *Id.* at ¶55. As Defendants note, ECF. No. 16 at n.1, Mr. Ramos Raygoza was released on bond on November 8, 2017.

The process of ICE detainee transfer is opaque. When ICE decides to transfer an immigrant detainee to a different facility, ICE only provides notice to the detainee "immediately prior to transfer." Am. Compl. at ¶26. ICE does not provide *any* notice *of any kind* to a detainee's children in advance of a detainee's transfer. *Id.* In fact, per ICE policy, the detainee is specifically not allowed to communicate with his family when informed of his impending transfer. *Id.* Pursuant to this policy, none of the children were given notice of their fathers' impending transfers to Texas. *Id.* at ¶¶30, 32.

Although both adult Plaintiffs have been released from ICE custody since filing this Complaint, they both allege that they are subject to re-detention by ICE at any time during the pendency of their immigration proceedings; thus they both remain at risk of sudden transfer out of reach of their children. *Id.* at ¶37. As their immigration proceedings remain pending, and both have filed applications for relief, they may eventually become permanent members of their Virginia communities with legal immigration status. *Id.* at ¶¶15, 18.  Mr. Diaz Morales alleges

that if he had been transferred as planned before filing this lawsuit, his transfer would have seriously infringed upon his right to family unity. *Id.* at ¶¶ 70, 74. Mr. Raymos Raygoza likewise alleges that his transfer *did* seriously infringe upon his right to family unity. *Id.*

## STANDARD OF REVIEW

In determining whether to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must determine whether the facts alleged in the complaint, "accepted as true . . . allow[] the court to draw the reasonable inference that the Defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Such factual allegations must present something more than conclusions, and a complaint must "state[] a plausible claim for relief." *Id.* at 678-79. The Court must draw "all reasonable inferences" from the complaint "in favor of the plaintiff." *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 419 (4th Cir. 2015) (internal quotations and citations omitted). The complaint should be read in the light most favorable to the plaintiff. *Id.* at 422.

Under Rule 12(b)(1), if a defendant brings a facial challenge to subject matter jurisdiction, "the court must evaluate the complaint in the same manner utilized in assessing a motion to dismiss for failure to state a claim." *Kimble v. Rajpal*, 566 Fed. Appx. 261 (4th Cir. 2014). If the defendant challenges the factual basis for subject matter jurisdiction, the Court may consider evidence beyond the four corners of the pleadings. *Id.* The Court should only dismiss a claim under Rule 12(b)(1) if "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond, Fredericksburg & Potomac R. Co. v. U.S.*, 945 F.2d 765 (4th Cir. 1991).

**ARGUMENT**

**I. The Complaint is Procedurally Proper**

**A.  Review of Plaintiffs' Claims Is Not Barred by 8 U.S.C. § 1252(a)(2)(B)(ii).**

This Court has jurisdiction to review the constitutionality of Defendants' detainee transfer decision-making process. The INA's jurisdictional bar to judicial review of denial of discretionary relief does not apply to this case because the INA does not "specify" that the Attorney General has unfettered discretion with regards to its detainee transfer decisions, and because Plaintiffs challenge the constitutionality of its decision-making process rather than the outcome of any individual decision. *See* 8 U.S.C. § 1252(a)(2)(B)(ii).

First, Section 1252(a)(2)(B)(ii) does not apply to ICE detainee transfer decisions. Section 1252(a)(2)(B)(ii) bars judicial review of "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is *specified under this subchapter* to be in the discretion of the Attorney General or the Secretary of Homeland Security[.]" (Emphasis added.) "'Specify' means '[t]o mention specifically'; that is, the language of the statute in question must provide the discretionary authority." *Spencer Enterprises, Inc. v. United States*, 345 F.3d 683, 689 (9th Cir. 2003), *citing* Black's Law Dictionary 1399 (6th ed. 1990).

The Supreme Court held in *Kucana v. Holder*, 558 U.S. 233, 252 (2010) that this bar applies only to "matters where discretion is conferred on . . . the Attorney General by statute[.]" As the Third Circuit explained, "The jurisdiction-stripping language of § 1252(a)(2)(B)(ii) applies not to all decisions the Attorney General is entitled to make, but to a narrower category of decisions where Congress has taken the additional step to specify that the sole authority for the action is in the Attorney General's discretion." *Alaka v. Attorney Gen. of U.S.*, 456 F.3d 88, 95 (3d Cir. 2006). "This section refers not to 'discretionary decisions,' as did the [previous

version of the statute], but to acts the authority for which is specified under the INA to be

discretionary. . . . [W]e must assume that this difference in language is legally significant. If

Congress had intended to withdraw jurisdiction over all 'discretionary decisions,' it would have

used the same language found in the [previous version of the statute]." *Spencer Enterprises*, 345

F.3d at 689. *Cf. Alsamhouri v. Gonzales*, 484 F.3d 117, 122 (1st Cir. 2007) ("An immigration

judge's authority to continue a case is not 'specified under' the subchapter to be in the discretion

of the Attorney General. . . . the relevant statutory provisions do not mention continuances, let

alone indicate that the granting or denial of continuances by an [Immigration Judge] is 'in the

discretion of the Attorney General.'"). *See also Kucana*, 558 U.S. at 251 ("[D]oubt about the

proper interpretation of 8 U.S.C. § 1252(a)(2)(B)(ii) would be dispelled by a familiar principle of

statutory construction: the presumption favoring judicial review of administrative action.").

Thus, section 1252(a)(2)(B)(ii) does not shield all "discretionary decisions" from review,

but only those decisions where the agency's discretion is "specified" in the text of the statute. To

meet its burden of establishing that section 1252(a)(2)(B)(ii) operates to bar review of this case,

Defendants would have to point to a specific section of statute that "specifies" detention

placement decisions to be within ICE's unfettered discretion. In its Memorandum, ECF No.16 at

9, the Defendant points only to 8 U.S.C. § 1231(g)(1). But that section of statute merely states:

> The Attorney General shall arrange for appropriate places of detention for aliens
> detained pending removal or a decision on removal. When United States
> Government facilities are unavailable or facilities adapted or suitably located for
> detention are unavailable for rental, the Attorney General may expend . . . amounts
> necessary to acquire land and to acquire, build, remodel, repair, and operate
> facilities . . . necessary for detention.

Although this section of statute clearly grants the agency the power to open and operate

detention facilities, nowhere does it "specify" the agency's unfettered discretion to determine

*which* ICE detainees are placed in which facilities; nor does it specify—as is actually at issue at

this lawsuit—*what factors* ICE must take into account in exercising its discretion to determine which detainees are placed in which facilities. This lawsuit does not challenge ICE's discretion to place detainees in facilities; it merely seeks to require that ICE take family ties into consideration in making that determination.  Section 1231(g)(1) does not "specify" that such placement and transfer decisions are committed to agency discretion.[1]

The cases cited by Defendant to the contrary are unavailing. *Gandarillas-Zambrana v. Bd. of Immigr. Appeals*, 44 F.3d 1251, 1256 (4th Cir. 1995), stands for the principle that the agency "necessarily has the authority to determine the location of detention of an alien in deportation proceedings [] and therefore, to transfer aliens from one detention center to another." But just because ICE has authority to transfer detainees does not shield it from review.  The only decisions shielded from review are those "specified" by the INA to be in the sole discretion of the agency; and *Gandarillas-Zambrana* does not make such a holding. Indeed, the other Court of Appeals cases cited by Defendants—*Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999); *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1440 (9th Cir. 1986); and *Wood v. United States*, 175 F. App'x 419, 420 (2d Cir. 2006)—all suffer from this same defect: while they hold that the agency has discretion to transfer detainees and house them where the agency sees fit (a proposition that Plaintiffs do not deny), and that this power *arises* from the INA, none establish that this discretion is "specified" such that it would divest this court of jurisdiction.

Even if this Court finds that ICE placement decisions are "specified" in the INA to be a matter of agency discretion, section 1252(a)(2)(B)(ii) does not bar judicial review of the

---

[1] The mere presence of the word "may" in 8 U.S.C. § 1231(g)(1), when referring specifically to government land-purchase decisions to open detention centers does not mean that individual ICE detainee placement decisions are therefore specified to be in the government's unfettered discretion. *See, e.g.*, *Elfeky v. Johnson*, 232 F. Supp. 3d 695, 705 (E.D. Pa. 2017).

decision-making process.  A claim is not barred where a plaintiff challenges not the outcome of a discretionary decision but the *constitutionality* of the process leading to that decision: "[D]ecisions that violate the Constitution cannot be 'discretionary,' so claims of constitutional violations are not barred by § 1252(a)(2)(B)." *Kwai Fun Wong v. United States*, 373 F.3d 952, 963 (9th Cir. 2004).  "[A]lthough the Attorney General's discretionary judgment . . . shall not be subject to review, claims that the discretionary process itself was constitutionally flawed are cognizable in federal court[.]" *Hernandez v. Lynch*, 2016 WL 7116611, at *11 (C.D. Cal. Nov. 10, 2016), *aff'd sub nom. Hernandez v. Sessions*, 872 F.3d 976 (9th Cir. 2017).

Plaintiffs are not asking this Court to second-guess the ultimate *outcome* of the agency's exercise of discretion in transferring detainees among its various detention facilities. Rather, Plaintiffs contend that constitutional due process requires that the agency consider family ties among the myriad of factors that it already takes into account in exercising its discretionary authority. This falls outside of the ambit of Section 1252(a)(2)(B)(ii):

> A decision in favor of Petitioners would not compel a particular result [], but rather would impact only the execution of the policies and procedures surrounding the ultimate [] decision. Petitioners are not asking this Court to interfere with the ultimate decision []—that issue would plainly fall outside this Court's jurisdiction pursuant to § 1252(a)(2)(B)(ii). However, Petitioners are asking that this Court ensure that Defendants comply with certain policies and procedures in making that [] decision—issues that are beyond the jurisdictional bar of § 1252(a)(2)(B)(ii) . . . Petitioners seek a ruling that Defendants' failure to follow their own policy directive is unlawful. In other words, Petitioners simply seek compliance with certain minimum procedural safeguards when [] decisions are made . . . Section 1252(a)(2)(B)(ii) does not bar that claim.

*Abdi v. Duke*, 2017 WL 5599521, at *5-6 (W.D.N.Y., Nov. 17, 2017).

For the foregoing reasons, 8 U.S.C. § 1252(a)(2)(B)(ii) does not bar this action and this Court has jurisdiction to adjudicate Plaintiffs' claims on their merits.

**B.  Plaintiffs' and Class Members' Claims are Not Moot**

A case is moot only "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," such that it becomes impossible for the court to grant "'any effectual relief whatever' to [the] prevailing party." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979), and *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992)).   "The central question" in a mootness inquiry "is constant—whether decision of a once living dispute continues to be justified by a sufficient prospect that the decision will have an impact on the parties."  *Wright & Miller* § 3533. Once a plaintiff has established standing, [2] the burden shifts to the defendant to demonstrate with absolute clarity that the behavior will not recur.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189-90 (2000).  That burden "is a heavy one."  *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953).

When a noncitizen has been released pending removal proceedings, ICE can revoke bond and re-detain him "at any time." 8 U.S.C. § 1226(b); 8 C.F.R. § 1236.1(c)(9). Even a bond issued by an immigration judge can be unilaterally cancelled by an ICE field office director, upon merely a finding of changed circumstances. *Saravia*, 2017 WL 5569838 at *16, quoting *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981). Accordingly, although Mr. Diaz Morales and Mr. Ramos Raygoza have been released from detention on bond, there is a "reasonable expectation that the wrong will be repeated." *See Com. of Va. ex rel. Coleman v. Califano*, 631 F.2d 324, 326 (4th Cir. 1980) (the defendant's failure to concede that the plaintiff was entitled to a hearing or that the defendant would provide such hearings in the future prevented the defendant

---

[2] Defendants do not and cannot argue that Plaintiffs lack standing, as both Mr. Diaz Morales and Mr. Ramos Raygoza were in ICE detention at the time each filed his complaint. "A plaintiff's standing is assessed as of the time an action was initiated and is unaffected by subsequent developments." *Hernandez*, 2016 WL 7116611, at *12, citing *D'Lil v. Best W. Encina Lodge & Suites*, 538 F.3d 1031, 1036 (9th Cir. 2008).

from meeting its heavy burden to demonstrate "that the alleged wrong will not be repeated"); *see also Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 322 (D.C. Cir. 2009), quoting *Clarke v. United States*, 915 F.2d 699, 704 (D.C. Cir. 1990)*; Llorente v. Holder*, 2012 WL 1191147, at *6 (D.N.J. Apr. 10, 2012) (in habeas petition challenging immigration detention, DHS bears burden of showing it is reasonable for petitioner to fear he might again be subject to the complained-of practice). *Cf. Abdi*, 2017 WL 5599521, at *16 ("[B]ecause Defendants assume the position that they may revoke Petitioners' parole at any time, for any reason . . . Petitioners' individual claims must receive the benefit of the 'voluntary cessation' doctrine because the re-detention of Petitioners falls within Defendants' broad discretionary control.").

For this reason, Plaintiffs' constitutional challenge to ICE's no-notice detainee transfer policy falls under the exception to mootness for those cases that are "capable of repetition, yet evading review." *Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975). The Supreme Court has emphasized that constitutional challenges to pretrial detention policies are particularly well-suited for the doctrine to apply. *See id.*; *see also Los Angeles Unified Sch. Dist. v. Garcia*, 669 F.3d 956, 958 n.1 (9th Cir. 2012); *Hernandez*, 2016 WL 7116611, at *12. As the Fourth Circuit has acknowledged, claims involving pretrial detention often evade review: "Pretrial detention is by nature temporary, and it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted." *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 249 (4th Cir. 2005), citing *Gerstein*.

Plaintiffs' freedom from detention rests in the sole discretion of the ICE District Director, Defendant Hott, who may revoke their bond at any time without any indication of wrongful behavior on Plaintiffs' part. This fact distinguishes this case from the criminal context, where courts have been reluctant to apply a mootness exception when the plaintiff will only be subject

11

to the unlawful acts complained of were they arrested for future criminal behavior. *See, e.g.*, *Slade*, 407 F.3d at 249 ("Slade will only find himself in pretrial detention at the Jail in the future if he is arrested for violating Virginia's criminal laws"); *Taylor v. Riverside Reg'l Jail Auth.*, No. 3:11-cv-456, 2011 WL 6024499, at *7 (E.D. Va. Dec. 2, 2011). Thus, Plaintiffs have demonstrated that there is "a 'reasonable likelihood' of repetition," the exception applies, and their claims are not moot. *Slade*, 407 F.3d at 249, *quoting Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002), *quoting Honig v. Doe*, 484 U.S. 305, 318–19 (1988).

Of course, Plaintiffs here seek to represent not only themselves, but also a class of similarly situated ICE detainees and a class of their U.S.-citizen children in Virginia. Were such classes to be certified, then mooting the claims of Mr. Diaz Morales and Mr. Ramos Raygoza (for example by granting them permanent relief such that they were no longer subject to re-detention or by deporting them) would not be grounds for dismissal. *Sosna v. Iowa*, 419 U.S. 393 (1975). "[W]here a plaintiff's claim becomes moot while he seeks to certify a class, his action will not be rendered moot if his claims are 'inherently transitory' (such that the trial court could not have ruled on the motion for class certification before his or her claim expired), as similarly-situated class members would have the same complaint." *Hernandez*, 2016 WL 7116611, at *13; *see also Comer v. Cisneros*, 37 F.3d 775, 799 (2d Cir. 1994); *Shifflett v. Kozlowski*, 1993 WL 21465, at *4–5 (W.D. Va. Jan. 25, 1993). Immigration detainees' claims are often held to be "inherently transitory" because "the length of [an alien's] detention cannot be ascertained at the outset" of a case "and may be ended before class certification by various circumstances." *Lyon v. ICE*, 300 F.R.D. 628, 639 (N.D. Cal. 2014). The instant class action is no different, and the

"inherently transitory" doctrine prevents this case from being dismissed as moot.[3]

Finally, Plaintiffs' Third Cause of Action, habeas corpus, need not be dismissed as moot solely because Mr. Diaz Morales and Mr. Ramos Raygoza are not presently detained. Defendants cite only one case in support of this proposition: a pro se habeas petition, *Elnour v. Crawford*, 2013 WL 6571828 (E.D. Va., Dec. 13, 2013), which in turn cites only to only one case, *Atem v. Ashcroft*, 312 F. Supp. 2d 792, 796 (E.D. Va. 2004). In *Atem*, the petitioner filed his habeas petition while in ICE custody, but was released by the time the matter was heard by the court. Judge Ellis dismissed as moot *only* that portion of the habeas petition "seeking release from []ICE custody," but did not dismiss as moot other legal issues presented in the case.

Indeed, the Supreme Court "has not required that a prisoner be physically confined in order to challenge his sentence on habeas corpus." *Maleng v. Cook*, 490 U.S. 488, 491 (1989). For example, a prisoner on parole from an unexpired or suspended sentence is still "in custody" because his release from confinement is not unconditional—it can be revoked if he does not obey explicit restrictions on his movements and activities. *See id.*, *citing Jones v. Cunningham*, 371 U.S. 236 (1963). Here, the liberty of Mr. Diaz Morales and Mr. Ramos Raygoza is even more precarious than that of parolees: while a parolee can only be re-detained if *a court* finds by a preponderance of the evidence that he has violated certain conditions of release, an immigration detainee's bond can be revoked *by the jailer* "at any time." 8 U.S.C. § 1226(b); 8 C.F.R. § 1236.1(c)(9). Thus, an immigration detainee's release on bond does "does not constitute a

---

[3] This conclusion is all the more valid where, as here, Defendants filed a motion seeking to prevent the Court from ruling on the class certification motion until after the Motion to Dismiss is decided. *See* ECF No. 18 (motion to stay class certification briefing until after resolution of Motion to Dismiss); ECF No. 26 (order granting same). It would be manifestly unjust to prevent Plaintiffs from having a hearing on their class certification motion until after a ruling on the Motion to Dismiss, and then to dismiss this case as moot because a class had not yet been certified.

termination of detention; it simply constitutes a reprieve from detention." *Rosales-Garcia v. Holland*, 322 F.3d 386, 396 (6th Cir. 2003). Accordingly, Mr. Diaz Morales and Mr. Ramos Raygoza are still "in custody" for habeas purposes, and their habeas corpus cause of action challenging ICE's no-notice detainee transfer policy is not moot. *See id.* at 395; *see also Farez-Espinoza v. Napolitano*, 2009 WL 1118098, at *7 (S.D.N.Y. Apr. 27, 2009); *Freire v. Terry*, 756 F. Supp. 2d 585, 586 n.2 (S.D.N.Y. 2010).

## II. Plaintiffs State Valid Due Process Claims and Are Entitled to Establish These Claims at Trial

### A.  Plaintiffs Have Properly Alleged Violations of Procedural Due Process

Longstanding Supreme Court precedent establishes that when a government action deprives an individual of a fundamental constitutional interest, that individual is entitled to due process consisting of notice and an opportunity to be heard. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). Citizens and non-citizens alike possess due process rights. *See Zadvydas*, 533 U.S. at 693; *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) (aliens are entitled to due process whether their presence is "unlawful, involuntary, or transitory").

Procedural due process "imposes constraints on government decisions which deprive individuals of 'liberty' or 'property' interests." *Mathews*, 424 U.S. at 332. The cornerstone of procedural due process is meaningful notice and an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust*, 339 U.S. 306 (1950). Further, "[t]he mere availability and utilization of some procedures does not mean they [are] constitutionally sufficient." *Cardall*, 826 F.3d at 743. To evaluate procedural due process claims, the Court uses the *Mathews v. Eldridge* balancing test. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529-30 (2004) (plurality opinion); *Santosky*, 455 U.S. at 754, 757 (applying the *Mathews* test to evaluate procedures for termination of parental rights).

The *Mathews* framework lays out three factors that must be weighed against each other:

> (1) the nature of the private interest that will be affected, (2) the comparative risk of an erroneous deprivation of that interest with and without additional or substitute procedural safeguards, and (3) the nature and magnitude of any countervailing interest in not providing additional or substitute procedural requirements.

*Cardall*, 826 F.3d at 742 (quoting *Turner v. Rogers*, 564 U.S. 431, 444-445 (2011)).

### i. Detained immigrants and U.S. citizen children have a liberty right to family unity.

Liberty, within the meaning of the Due Process Clause, "includes more than the absence of physical restraint," and the right "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 719-20 (1997). The protected liberty interests recognize a right to family unity, which is "deeply rooted in this Nation's history and tradition."[4] *Id.* at 721 (citing *Meyer v. Nebraska*, 262 U.S. 390 (1923)).

In recognition of longstanding jurisprudence exploring the contours of the right to family unity, the Fourth Circuit has declared that "perhaps the oldest of the fundamental liberty interests recognized by the Supreme Court [is] the interest of parents in the care, custody and control of their children." *Cardall*, 826 F.3d at 740 (quoting *Troxel v. Granville*, 530 U.S. at 65 (plurality opinion)); *Hodge v. Jones*, 31 F.3d 157, 163 (4th Cir. 1994) (the "sanctity of the family unit is a

---

[4] Historically, this right has been referred to as the right to "family integrity," *D.B. v. Cardall*, 826 F.3d 721, 740 (4th Cir. 2016); the interest in "the custody, care and nurture of the child," *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944); an interest in the "companionship, care, custody, and management" of one's children, *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); the "freedom of personal choice in matters of . . . family life", *Cleveland Bd. Of Educ. v. LaFleur*, 414 U.S. 632, 639 (1974); "the relationship between parent and child," *Quilloin v. Walcott*, 434 U.S. 246, 255 (1978), the liberty interest "in the care, custody, and control" of one's children, *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (internal citations omitted) (encompassing the right to direct a child's upbringing and education and to "establish a home and bring up children); "familial relations," *Brokaw v. Mercer County*, 235 F.3d 1000, 1018 (7th Cir. 2000); and "family association" and "family privacy," *Berman v. Young*, 291 F.3d 976, 981 (7th Cir. 2002), among others. For ease of reference, we refer to "family unity" as encompassing the familial right expressed in this broad range of labels.

fundamental precept firmly ensconced in the Constitution"); *see also, Wooley v. City of Baton Rouge*, 211 F.3d 913, 923 (5th Cir. 2000) (the relationship between parent and child is constitutionally protected and "a child's right to family integrity is concomitant to that of a parent"); *Santos v. Smith*, 260 F. Supp. 3d 598 (W.D. Va. 2017) (alien children and their alien parents enjoy constitutional due process rights protecting their right to family unity).

"Children also enjoy a 'familial right to be raised and nurtured by their parents.'" *Cardall*, 826 F.3d at 740 (citing *Berman v. Young*, 291 F.3d 976, 983 (7th Cir. 2002) *as amended on denial of reh'g* (June 26, 2002) ("The constitutional violation alleged is an infringement on due process rights to family association and privacy. Parents have a fundamental due process right to care for and raise their children, and children enjoy the corresponding familial right to be raised and nurtured by their parents") (citations omitted)). The Supreme Court has similarly held that "the child and his parents share a vital interest in preventing erroneous termination of the natural relationship." *Santosky v. Kramer*, 455 U.S. 745, 760 (1982). Even in *Aguilar v. ICE*, a First Circuit case cited heavily by Defendants, the Court accepts the premise that there *is* a fundamental right to family unity held by the immigrant petitioners. 510 F.3d 1, 18-24 (1st Cir. 2007) (acknowledging the fundamental right to the care, custody, and control of one's children, but holding that detention of an undocumented immigrant *itself* does not amount to a violation of substantive due process).  As the caselaw makes clear, the right to family unity is a fundamental constitutional right held by both parent and child.[5]

---

[5] This is true regardless of the immigration status of the parents or children at issue.  *See, e.g.*, *Santos*, 260 F. Supp. 3d at 598 (holding that the immigration status of the child or parent "has no application in the non-immigration context here, where petitioner is challenging neither his admissibility/removability nor his detention *per se*, but due process violations in the decision not to release him to his mother"). *See also Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Hernandez v. Sessions*, 872

The right of a parent to maintain a relationship with his children, and his children's concomitant right to the love and care of their parents, are "sacrosanct." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 343 (4th Cir. 1994); *see also, Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (due process protects children against being dislocated from the emotional attachments that derive from the intimacy of daily association with parents). The Fourth Circuit has declared, "[T]he forced separation of parent from child, even for a short time, represents a serious impingement on [parental] rights." *Jordan,* 15 F.3d at 346. Even temporary deprivations implicate a parent and a child's fundamental familial rights and are protected by the due process clause. *Id.* at 333; *see also Croft v. Westmoreland County of Children and Youth Services*, 103 F.3d 1123, 1125 (3rd Cir. 1997) (Due process requirements "prohibit the government from interfering in familial relationships unless the government adheres to the requirements of procedural and substantive due process.") The right to family integrity is implicated across a broad range of activities: a parent's ability to provide care for her detained child, and for her child to enjoy the care and nurture of his mother, *see e.g., Cardall,* 826 F.3d 721 (4th Cir. 2016); in educational decisions for one's children, *see e.g., Meyer v. Nebraska*, 262 U.S. 390 (1923); and when custodial rights are challenged, *see e.g., Stanley v. Illinois*, 405 U.S. 645 (1972).

Family unity is also implicated in parent-child visitation. The majority of federal circuits that have addressed the issue have concluded that parents have a protected liberty interest in visitation with their children. *Brittain v. Hansen*, 451 F.3d 982, 992 (9th Cir. 2006) (collecting cases). The Fourth Circuit has held that decisions regarding visitation between a child and non-

---

F.3d at 981 ("The government's discretion to incarcerate non-citizens is always constrained by the requirements of due process"); *Saravia v. Sessions*, No. 17-cv-03615 , 2017 WL 5569838, at *16 (N.D. Cal., Nov. 20, 2017) ("[I]t is clear, notwithstanding the governments' argument to the contrary, that [alien] minors . . . have procedural due process rights rooted in the Constitution.").

custodial parent implicate "the greater liberty interest inherent in the custody of one's child." *Weller v. Dept. of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 394 (4th Cir. 1990).

The Defendants' assertion that courts have rejected the family unity rights of detained parents and their U.S. citizen children is incorrect. The cases cited by Defendants address different circumstances and raise distinct issues than those raised in the case at hand, mostly access to counsel (not at issue here) or the effect upon family unity caused by a noncitizen's ultimate deportation (also not at issue here). For example, the Defendants cite *Gallanosa by Gallanosa v. United States*, 785 F.2d 116 (4th Cir. 1986) to show that the Fourth Circuit has rejected family unity rights in the removal process. Defs.' Mem. at 6. However, the court in *Gallanosa* never mentions family unity, nor does it appear that the petitioners in that case ever raised it as an issue. Instead, the court rejected a claim that the deportation of a parent of a U.S. citizen "would effect a de facto deportation of the citizen child" and rejected a medical necessity claim by that same child as being brought in the wrong venue. 785 F.2d 116 at 120. *Lin v. United States*, an unreported case from the Southern District of Texas, was a head-on challenge to post-removal order detention pending removal from the country. 2007 WL 951618 (S.D. Tex.). The court rejected a general right to family unity, i.e. "the right of family members to maintain their "ongoing relationship[s] as a family unit" free from *any* government action that may incidentally disrupt familial intimacy or proximity." Besides the fact that the case carries no persuasive force, the right Plaintiffs claim in this case is much narrower: the right to maintain their family unit, subject to and consistent with the government's interest in detaining them *prior* to receiving a final order of removal.

*Aguilar* addresses the right to family unity in the context of a challenge to immediate detention and transfer following a "ham-handed" execution of an immigration arrest and

detention operation. 510 F.3d at 19, 24. However, it only addresses a substantive due process claim. *Id.* at 21 ("The due process guarantee has both procedural and substantive aspects. Its substantive component is at issue here.") (citations omitted). It does not address procedural due process violations of the right to family unity at all. *Id.* at 21. In *Aguilar*, the First Circuit found that ICE's affirmative attempt to work with many of the detained immigrants to assure their families were cared for undercut plaintiffs' allegations that their conduct "shock[ed] the conscience." *Id*. at 22. In contrast, here, ICE has deliberately disregarded Plaintiffs' rights to family unity, going so far as to take steps to assure that the plaintiffs did not know and could not even communicate their impending transfer prior to being shipped out. Am. Compl. at ¶¶ 23-29.

In short, none of these cases stand for the incorrect proposition put forward by Defendants in their brief that Plaintiffs do not enjoy a liberty interest in family unity or that no-notice detainee transfer cannot violate their due process rights. As shown above, they do and it certainly can.

### ii. Defendants have interfered with the Plaintiffs and Class Members' rights to family unity by depriving them of each other's physical presence.

Courts routinely recognize the centrality of children and parents spending time together to the right to family unity. *See, e.g.*, *Bostic v. Schaefer*, 760 F.3d 352, 383 (4th Cir. 2014) ("[F]amily stability, economic resources, and the quality of parent-child relationships [] are linked to children's positive development. . ." (internal quotations and citations omitted)); *see also, Kitchen v. Herbert*, 755 F.3d 1193, 12-14-15 (10th Cir. 2014)("[T]he importance of the familial relationship, to the individuals involved and to the society, stems from the emotional attachments that derive from the intimacy of daily association. . ." *Smith v. Org. of Foster Families for Equal. & Reform,* 431 U.S. 816, 843 (1977).

In this case, both parents and children are challenging the Defendants' intrusion on their

relationship without affording so much as any notice, any opportunity to respond, or any consideration of alternatives. ICE affords no meaningful notice to detainee or child with respect to a transfer decision when it determines whether to transfer a detainee. Am. Compl. at ¶¶26-27. The Defendants do not deny that no process exists for providing meaningful notice and opportunity to be heard to either detainees or their children. Defs.' Mem. at 22. In fact, ICE concedes that it *affirmatively prohibits providing advanced notice of transfer* to detainees and their children. *Id.* The decision to transfer a detainee parent has already been made and is final once that detainee learns of his transfer. *See* Am. Compl. at ¶¶26-29. Without meaningful notice, there can be no meaningful opportunity to be heard. Once the detainee learns of his impending transfer (when he is prepared for travel), he does not have an opportunity to present further information or argument. Furthermore, because there is no notice to the detainee's family, the children of detainees obviously have no opportunity to participate in the decision in any way. With respect to preserving the limited family unity that is afforded when a parent is detained by ICE, there is absolutely no due process given to either the detainee parent or the U.S. citizen child, despite the weighty liberty interests of both.

    Here, Plaintiffs have alleged sufficient facts to show that they have been subjected to sudden no-notice transfer, or may in the future be subjected to sudden no-notice transfer, depriving them of their interest in family unity in the form of physical visits with their children/parents. Am. Compl. ¶78. Plaintiffs' complaint alleges that the ability to physically visit with one another is vital to their parent-child relationship, the minor Plaintiffs' development, and to the parents' ability to care for and nurture their children, particularly during the stressful and traumatic period of the parent's detention. *See* Am. Compl. ¶38-56. It can and should be inferred from the complaint, alleging that each child visited his or her parent at least once, and most

visited multiple times, that such visits were fundamentally important to family unity for both child and parent during the period of detention. *See Iqbal*, 556 U.S. at 678; *SD3, LLC*, 801 F.3d at 419. Common sense also dictates that the Court recognize the qualitative and fundamental importance to parents and children who have close relationships of physically visiting with each other while a parent is detained and otherwise inaccessible. *See Iqbal*, 556 U.S. at 678. The Complaint clearly establishes that Plaintiffs were or would have been deprived of their liberty interests in violation of the Due Process Clause through their transfer away from their children.

In ruling on a 12(b)(6) motion, the Court is confined to "the four corners of the complaint." *U.S. ex. Rel. Oberg*, 745 F.3d at 136. Here, Defendants attempt to go well beyond the Complaint, suggesting alternative remedies for a right they do not even acknowledge exists. Defs.' Mem. at 19-20. For example, Defendants claim that transfer across state lines is not necessarily harmful to family unity because a detainee could hypothetically be transferred to Maryland and thus be closer to his family. Defs.' Mem. at 19-20. However, the prospect of transfer *closer* to one's children was not raised in Plaintiffs' Complaint, nor would it have been.[6] Defendants also suggest that telephone calls or video conferencing would serve to satisfy these children's right to family integrity. Defs.' Mem. at 20. While the Plaintiffs are highly doubtful that videoconferencing is made available anywhere for ICE detainees to communicate with their families, it is a factual allegation that cannot be found within the four corners of Plaintiffs' Complaint, and is thus not appropriate for consideration on a Motion to Dismiss.

---

[6] Plaintiffs here were either transferred or intended to be transferred to Texas, not closer to their families in Maryland as Defendants suggest. Am. Compl. ¶¶29-30, 32. The example is not apt in this case, nor is it likely. *See* Am. Compl. ¶¶29, 36, 62, 67. To the extent that this court finds that Plaintiffs utilized the incorrect standard to determine whether visitation was possible and therefore not in violation of family unity interests, Plaintiffs seek leave to amend their complaint to more accurately represent the point at which transfer may become harmful to family unity.

In their Complaint, Plaintiffs allege harm from the inability to physically visit with one another. Am. Compl. at ¶¶30, 32, 34, 40, 44, 47, 50, 52, 55-56. Their claim is tied to physical contact between parent and child. The appropriate time to present alternative solutions to preserve family unity is when the Court reaches the issue of relief, not on the posture of a motion to dismiss. Plaintiffs in this case have alleged with sufficient facts that the transfers did or would harm their parent-child relationships by preventing meaningful contact between parent and child for an unknown period of detention, and at this stage, the Court must accept those facts as true.

   iii.   **The *Matthews* factors weigh heavily in the Plaintiffs' favor.**

When the state interferes with a liberty interest such as family unity, the constitutionality of such action typically "depends on the adequacy of the procedures available to contest them." *Cardall*, 826 F.3d at 741. The law of the Fourth Circuit is clear: in cases where the state intends to intervene in the parent-child relationship, procedural due process requires the opportunity to be heard. *See Jordan*, 15 F.3d at 344-53; *Weller*, 901 F.2d at 394.

The non-existence of any ICE process makes it simple and straightforward to apply the *Mathews* balancing test to determine whether there has been a constitutional violation of procedural due process. First, the private interest at stake is among the weightiest interests protected by the U.S. Constitution: the right to family unity. The importance of the right for Mr. Diaz Morales and Mr. Ramos Raygoza to spend time with and nurture their children, and their children's concomitant right to the love and care of their fathers, are "sacrosanct." *Jordan*, 15 F.3d at 343; *see also Cardall*, 826 F.3d at 740 ("Just as parents possess a fundamental right with respect to their children, children also enjoy a familial right to be raised and nurtured by their parents"); *Hodge*, 31 F.3d at 163 (the "sanctity of the family unit is a fundamental precept firmly ensconced in the Constitution"); *Wooley*, 211 F.3d at 923 (the relationship between mother and

22

son is constitutionally protected and "a child's right to family integrity is concomitant to that of a parent"). Plaintiffs' interests in family unity are extremely weighty.

ICE planned to transfer Mr. Diaz Morales and did transfer Mr. Ramos Raygoza to Livingston, Texas, approximately 1,300 miles from their children in Virginia. Am. Compl. ¶¶29, 30, 32. Recognizing the importance of family relationships, ICE has established, at least on paper, a preference for preserving the ability of parents to have face-to-face visitation with their U.S. citizen children. *See* Am. Compl. at ¶¶26-27. It follows that when a parent detainee is transferred away from his or her children, ICE recognizes that the transfer occurs to the detriment of the detainee and the child's fundamental right to family unity.

Second, when ICE selects detainees to transfer randomly and without consideration of whether the detainee is a parent of U.S. citizen children living within a reasonable visitation distance, it erroneously deprives those parents and children of their right to family unity. Additional (or any) procedures would provide a benefit and reduce the high risk of erroneous deprivation to parents and their children. Indeed, the risks of erroneous deprivation "are particularly great where children are involved." *Parham v. J.R.,* 442 U.S. 584, 629 (1979). As the Supreme Court recognizes, "childhood is a particularly vulnerable time of life" and deprivations "during their formative years may bear the scars for the rest of their lives." *Id.* at 628 (1979) (discussing erroneous institutionalizing children). Thus, both the risk of erroneous deprivation and the likely value of "additional or substitute safeguards" must be analyzed taking the unique vulnerabilities of children into account.

In Plaintiffs' cases, ICE would have or did erroneously deprive them of their right to family unity in selecting Mr. Diaz Morales and Mr. Ramos Raygoza for transfer to Texas, rather than detainees whose family unity rights were not at stake. Plaintiffs allege in their complaint

that although ICE does have a formal policy to identify which detainees have U.S. citizen children, this information, if it is collected at all, has little or no bearing on transfer decisions made by ICE. Am. Compl. at ¶¶26-29. There are no procedures for providing meaningful notice to either detained parents or their children. *Id.* Nor is there any process established for affording detainees or their children an opportunity to present their interests in the face of a proposed transfer. *Id.* Therefore there is a high risk, indeed it is almost certain, that ICE will transfer detainees away from their U.S. citizen children without ever identifying or considering their relationship; such a transfer constitutes erroneous deprivation of Plaintiffs' rights to family unity.

Adding even minimal process affording adequate notice that a transfer may take place and establishing some mechanism by which parents and children may present their interests would ensure that the government makes an individualized inquiry into the family circumstances of each detainee when it evaluates whether and where to transfer its detainees. Such inquiry would alert the Defendant that a detainee selected for potential transfer has family unity interests that would be impacted by being transferred, and would provide information necessary to weigh those interests and avoid erroneously designating parents with strong family unity interests for transfer away from their children. Minimal additional procedures requiring ICE to simply consider family unity interests as one factor when making transfer decisions would significantly reduce the risk of erroneously depriving detainees and their children of their liberty interests.[7]

---

[7] Plaintiffs are certainly not proposing that actual hearings are required; indeed, a written notice with opportunity to respond in writing may well prove to be sufficient. The Supreme Court recognized that "due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). Thus, to determine whether administrative procedures are constitutionally sufficient requires an examination of the governmental interests, including "the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 334. But some process is ultimately required before the government interferes with a fundamental constitutional right.

Finally, the governmental interest at stake is purely administrative, related to the detainee capacity of its detention centers. The interests relating to public safety or ensuring appearance in immigration proceedings that typically justify immigration detention in general do not logically apply to transferring detainees around the country. *See Zadvydas*, 533 U.S. at 690. But Plaintiffs do not seek to curtail the government's ability to (for example) transfer detainees from overcrowded detention facilities in Virginia to less-crowded detention facilities in Texas; rather, Plaintiffs merely argue that in deciding *which* detainees to transfer from Virginia to Texas, it must take into account (among the myriad other factors it takes into account) the presence of children in Virginia, and the liberty interests of those children and their detained parents. In order to take this into account, it must give those children and their parents advance notice and an opportunity to be heard, even if only on paper. Plaintiffs do not propose to design a procedure for the Defendants; nor do they demand a lengthy or overly-involved one. Certainly, the Defendants must develop a process that makes "skillful use of personnel and facilities" to conserve "fiscal and administrative resources" while providing constitutionally sufficient notice and an opportunity to be heard. *Goldberg v. Kelly*, 397 U.S. 254, 266 (1970) ("the stakes are simply too high . . . and the possibility for honest error or irritable misjudgment too great" to allow infringement upon fundamental rights without adequate due process) (internal quotations and citations omitted). Here, Plaintiffs seek only minimal safeguards to protect their rights, possibly only a single form sent to and returned by the detained parent and the child. The administrative burden is simply not as great as the Government would make it out to be.

Plaintiffs have sufficiently pled and established a liberty interest in family unity that is

implicated in ICE detainee transfer decisions.[8] They have established, and the Defendants

concede, that no process was afforded nor exists to afford notice or an opportunity to be heard

regarding transfer decisions to detainees or their children. They have further shown that given

the weighty private interest, the benefits of adequate procedures, and the minimal government

interest, the Government has violated Plaintiffs' right to procedural due process.

### B. Plaintiffs Have Properly Alleged Violations of Substantive Due Process

As established above, Plaintiffs have a fundamental interest in family unity, even when a

parent or a child is detained. *Supra* Part II.A.i. Substantive due process protects individuals

against arbitrary government action. *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). The

Due Process Clause "was intended to prevent government officials from abusing [their] power,

or employing it as an instrument of oppression."[9] *Lewis*, 523 U.S. at 846 (internal quotations and

---

[8] The Government incorrectly argues that Plaintiffs must establish a substantive due process violation in order to establish a procedural due process violation. *See* Defs.' Mem. at 21. However, the two analyses are distinct. In fact, the Fourth Circuit in *D.B. v. Cardall* remanded the case precisely *because* the lower court had not sufficiently analyzed *both* the substantive *and* procedural due process rights protecting against state interference with the right to family unity. *Id.* at 742-43 (noting that the district court erred when it did not employ the *Mathews v. Eldridge* framework in the underlying decision). Contrary to Defendant's claim that the right at stake is the "right to detention in a specific location," Defs.' Mem. at 21, the liberty right at stake in this case is the right to family unity, a constitutionally protected fundamental liberty interest. *Supra* Part II.A.i. Having established that Plaintiffs have a liberty right to family unity, the Court must determine whether they have sufficiently alleged a constitutional violation of their procedural due process rights.

[9] The U.S. Government has used family separation as "an instrument of oppression" throughout our nation's history. One example, although surely not the only example, was the policy of Indian Boarding Schools established in the late 1800s and carried out as recently as the 1960s and 70s. *See* Lorie M. Graham*, Reparations, Self-Determination, and the Seventh Generation*, 21 Harv. Hum. Rts. J. 47, 49 (2008). During this operation, the U.S. government removed thousands of Native American children from their families and transported them great distances in acts of severe government oppression. *Id.* In 1978, nearly a century after their establishment, the Indian Child Welfare Act granted Native American parents the right to deny their children's placement in off-reservation schools. *Id.* at 55. Yet another example is the separation of children from their gay or lesbian parents. *See, e.g. Bottoms v. Bottoms*, 457 S.E.2d 102 (Va. 1995) (denying custody to the child's mother in large part because of "felonious sexual conduct inherent in lesbianism").

citations omitted). To rise to the level of a substantive due process violation, official conduct must "shock the conscience." *Lewis*, 523 U.S. at 846 (citing *Rochin v. California*, 342 U.S. 165 (1952)). However, the "measure of what is conscience shocking is no calibrated yard stick" and it merely "point[s] the way." *Id.* at 847 (internal quotations and citations omitted).

Defendants mischaracterize Plaintiffs' claims under substantive due process, and thus fail to discuss the substantive rights actually at stake in this case. Defendants state that Plaintiffs' claim "is premised on the legal proposition that aliens have a substantive due process right to remain in immigration detention within Virginia, where their children live." Defs.' Mem. at 10. This is not Plaintiff's contention. Plaintiffs' claim is premised on the legal proposition that all individuals, whether aliens or citizens, have a fundamental liberty interest in family unity that is protected by the Due Process Clause. *Supra*, Part II.A.i. Defendants also attempt to parse substantive due process protections into discrete and seemingly unrelated family-based rights based on marginally relevant case law. *See* Defs.' Mem. at 17-19. However, due process protections are better understood as "not a series of isolated points . . . [but as] a rational continuum which, broadly speaking, includes a freedom from all substantial arbitrary impositions and purposeless restraints . . ." *Poe v. Ullman*, 367 U.S. 497, 543 (1961) (J. Harlan dissenting) (cited in *Albright v. Oliver*, 510 U.S. 266, 287 (1994) (J. Souter concurring)).

"Deliberate indifference," particularly "when actual deliberation is practical . . . and in the custodial situation of a prison" may rise to the level of shocking the conscience. *Id.* at 851. Forced separation of parent and child may also implicate substantive due process and the child's "constitutional right to familial relations". *Brokaw v. Mercer County* 235 F.3d 1000, 1018 (7th

---

Given our nation's history, courts and government actors should be particularly sensitive to ways in which government imposed family separation may serve as an "instrument of oppression" and should take steps to prevent unlawful and even unnecessary separation of families.

Cir. 2000) (recognizing that familial relations are "the foundation of not just this country, but of all civilization"). Substantive due process protections have generally been "accorded to matters relating to marriage [and] family." *Albright v. Oliver*, 510 U.S. 266, 274 (1994). This includes the right "to cultivate family . . . relationships." *Albright*, 510 U.S. at 294 (J. Souter concurring).

In this case, and in the cases of similarly situated families, the government removes a parent from his children and places him in custody pending removal proceedings. Petitioners do not, nor could they, challenge the lawfulness of detention in general. However, even when detained, petitioners maintained their parent-child relationship through physical visits by detainees' children to the detention facilities where they were held. *See* Am. Compl. These visits were vital to the relationship, and was likely the only way for the children to enjoy the comfort, nurture, and care of their detained parent.

The transfer decisions in this case were by no means urgent decisions made with little time for deliberation, *See Lewis*, 523 U.S. at 851, but were routine and came many weeks after the Plaintiffs were first detained. Am. Compl. at ¶23-24, 29. The Defendants could easily collect (if it does not already) the information necessary to make an informed decision and avoid impinging on Plaintiffs' fundamental family rights. In fact, the Defendants assert no government interest or rationale *at all* for these transfers, which at the very least raises the specter of arbitrary government action. *See* Defs.' Mem. This is exactly the type of action substantive due process is intended to prevent. *See Lewis*, 523 U.S. 833 (1998). Indeed, it is also in the interest of the state to protect the welfare of its citizens, including the integrity of their families. Thus, it has an interest in and obligation to protect the family unity interests of the child-plaintiffs in this case and of preserving and protecting their relationships with their parents. Even more so because of the possibility that Mr. Diaz Morales and Mr. Ramos Raygoza will be entitled to immigration

28

relief and likely will, at the conclusion of their removal proceedings, remain with their families in Virginia, responsible for preparing their children for positive and active participation in society. *See Prince*, 321 U.S. at 166 (parents' "primary function and freedom include preparation for obligations the state can neither supply nor hinder.")

Defendants attempt to equate civil immigration detention with criminal detention to show that transfers do not "shock the conscience." The comparison is inapt. As Defendants concede, immigration detention "is not a criminal sanction," Defs.' Mem. at 15 and, importantly, Plaintiffs have been convicted of no crime. In each of the cases cited by Defendants, the person asserting the due process right to avoid transfer was being held subject to a criminal conviction. *Olim v. Wakinekona,* 461 U.S. 238, 245 (1983), *Newbold v. Stansberry,* No. 1:08CV1266 (LO/JPP), 2009 WL 86740 (E.D. Va. Jan. 12, 2009) (O'Grady, J.); *Lyons v. Clark*, 694 F.Supp. 184 (E.D. Va. 1988) (Ellis, J.). Thus, the very underpinnings of those cases—a conviction that extinguishes the incarcerated person's liberty interest—is not present in this case. *See Olim*, 461 U.S. at 244 (quoting *Meacham v. Fano*, 427 U.S. 215, 224-225 (1976)("The conviction has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in *any* of its prisons."). Because an individual who is civilly detained pending removal proceedings is "not convicted, he may not be punished." *Id.* (internal citations omitted).

In civil detention, the government interests are quite different from in the criminal context where the Government has a "punitive interest." *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992). The government interest in *civil* detention is simply to ensure that aliens appear at their immigration proceedings and prevent danger to the community. *See, e.g. Zadvydas*, 533 U.S. at 690; *Flores*, 507 U.S. at 316 ("There must be a "sufficiently compelling" governmental interest to justify [detention], usually a punitive interest in imprisoning the convicted criminal or a

regulatory interest in forestalling danger to the community"). Preventative detention has nonetheless been upheld only "subject to strong procedural protections." *Zadvydas*, 533 U.S. at 690; *see also Flores*, 507 U.S. at 306. Here, the government's only interest in its ability to transfer immigration detainees halfway across the country (a much greater distance from their existing removal proceedings) is its own administrative convenience, not even to prevent flight or danger to the community. But "'administrative convenience' is a thoroughly inadequate basis for the deprivation of core constitutional rights." *Flores*, 507 U.S. at 311 (Stevens, J., dissenting).

Thus Defendants' actions rise to the level of a substantive due process violation. The actions took place in a civil pre-removal custodial context allowing for deliberation and careful decision-making regarding detained parent transfers. The Plaintiffs have provided sufficient facts to show that harm was or is likely in the future to be done to the centrally important parent-child relationship. Therefore, in this case, it shocks the conscience that the Government would blithely sever parent-child ties and impose yet another trauma upon both parent and child beyond that imposed by any initial detention. This is all the more shocking because transfer is merely for the convenience of the Defendants, rather than in the interests of enforcing our immigration laws. As such, it rises to the level of a substantive due process violation.

## CONCLUSION

The law of the Fourth Circuit is clear: in cases where the state intends to intervene in the parent-child relationship, procedural due process requires notice and the opportunity to be heard. *See Jordan*, 15 F.3d at 344-53; *Weller*, 901 F.2d at 394. The Government's intrusion on Plaintiffs' liberty interests through no-notice detainee transfers likewise violates Plaintiffs' substantive due process rights. Plaintiffs have thus properly stated plausible claims for relief and the Court should deny Defendants' Motion to Dismiss.

Respectfully submitted,

LEGAL AID JUSTICE CENTER

By: _____/s/ Rebecca Ruth Wolozin_____          Date: 12/20/2017
Rebecca Ruth Wolozin (VSB No: 89690)
Simon Sandoval-Moshenberg (VSB No.: 70110)
Angela Ciolfi (VSB No.: 65337)
Sophia Gregg (VSB No.: 91582)
Nicholas  C. Marritz (VSB No.: 89795)
6066 Leesburg Pike #520
Falls Church, Virginia 22041
(703) 778-3450 / Fax: (703) 778-3454
becky@justice4all.org
simon@justice4all.org
angela@justice4all.org
sophia@justice4all.org
nicholas@justice4all.org
*Counsel for the Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 20th day of December 2017, Plaintiffs' Response to

Defendants' Motion to Dismiss was uploaded to this court's CM/ECF system. This system will

then send a notification of electronic filing to counsel for all parties.


Dated: December 20, 2017                    Respectfully submitted,


                                            Rebecca R. Wolozin, VSB No. 89690
                                            (becky@justice4all.org)
                                            LEGAL AID JUSTICE CENTER
                                            6066 Leesburg Pike, Suite 520
                                            Falls Church, VA 220041
                                            (703) 720-5606

                                            By: ___/s/ Rebecca R. Wolozin_____
                                            Attorneys for Plaintiffs