**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| **ARELI VEGA REYNA,** *et al.*, | * | |
| | * | |
| Plaintiffs, | * | CASE NO. 1:17-CV-1192-LO-TCB |
| | * | |
| v. | * | |
| | * | |
| **RUSSELL HOTT,** *et al.*, | * | |
| | * | |
| Defendants. | * | |
| | * | |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and E.D. Va. R. 7(F), Defendants Russell Hott, et al. ("Defendants") respectfully submit the instant reply memorandum of law in support of their motion to dismiss with prejudice the Amended Complaint of Plaintiffs Areli Vega Reyna, et al. ("Plaintiffs").

**INTRODUCTION**

Plaintiffs' Opposition provides the Court no reason to forestall dismissal of the Amended Complaint. While Plaintiffs dispute the applicability of a statutory bar to jurisdiction, they do so by incorrectly taking an overly narrow reading of that statute. Thus, the Court should dismiss this action for lack of subject matter jurisdiction. Even if the Court were to find jurisdiction, it should dismiss the Amended Complaint for failure to state a claim. Those federal courts that have confronted the specific constitutional position Plaintiffs present here have rejected it in no uncertain terms. And in arguing for a different result from this Court, and for substantive due process protection from transfer to detention facilities outside of Virginia, Plaintiffs rely on generalities in a misguided attempt to expand the general right of family unity to this specific

1

instance in which it does not apply. That attempt flouts settled law relating to the adjudication of substantive due process claims, and this Court should reject it. Finally, because Plaintiffs have failed to establish a recognized liberty interest against transfer, they have no procedural due process right to notice and a hearing before being transferred to another detention facility.

## ARGUMENT

I. **The statutory grant of discretion to the Government precludes the Court from considering Plaintiffs' claims.**

In their Motion to Dismiss, Defendants discussed the statute at 8 U.S.C. § 1252(a)(2)(B)(ii) that barred judicial review of Defendants' discretionary decisions to transfer immigration detainees. Plaintiffs attempt to salvage their claim by taking an unduly narrow reading of the statute and by raising a non-existent distinction between the discretion "arising from a statute," as opposed to being "specified in the statute." The Court should reject that argument.

In arguing that the Supreme Court created that distinction in *Kucana v. Holder*, 558 U.S. 233 (2010), Plaintiffs have misapplied that case. In *Kucana*, the Court found that the jurisdiction-limiting effects of Section 1252(a)(2)(B)(ii) could not arise from discretion granted to the Executive through its own regulations. *Id* at 240-41. Instead, the jurisdictional bar located in Section 1252(a)(2)(B)(ii) applies only to "matters where discretion is conferred on . . . the Attorney General[1] by statute[.]" *Id.* at 252. Plaintiffs here dispute that 8 U.S.C. § 1231(g)(1) confers discretion on the Government to transfer immigration detainees. But the Fourth Circuit, along with several other circuits, has recognized Section 1231(g)(1) (or its predecessor, 8 U.S.C.

---

[1] After the enactment of the Homeland Security Act of 2002, statutory references to the Attorney General's immigration enforcement authority are deemed to refer to the Secretary of Homeland Security, who has assumed responsibility for such functions. *See* 6 U.S.C. §§ 251(2), 557.

§ 1252(c)) as a statute that vests the Executive with unfettered discretion to determine the place of confinement for aliens. *See Gandarillas-Zambrana v. Bd. of Immigr. Appeals*, 44 F.3d 1251, 1256 (4th Cir. 1995); *see also Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (holding that "Attorney General's discretionary power to transfer aliens from one locale to another, as she deems appropriate, arises from" statute); *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1440 (9th Cir. 1986) (holding that Executive "has the authority, conferred by statute, to choose the location for detention and to transfer aliens to that location"), *as amended*, 807 F.2d 769 (1987); *Wood v. United States*, 175 F. App'x 419, 420 (2d Cir. 2006) (holding that Executive "in the exercise of his statutory discretion in light of the available facilities, determined to hold Wood in an Arizona detention center. The Attorney General was not required to detain Wood in a particular state"). As such, the discretion that is the subject of this motion arises from statute, not from regulation.

The Fourth Circuit's finding in *Gandarillas-Zambrana* that a statute confers discretion on the Executive's discretion to transfer detained aliens binds this Court. This Court should, therefore, find that Section 1231 and Section 1252(a)(2)(B)(ii) preclude this Court from reviewing DHS's exercise of discretion in transferring Plaintiffs and putative class members. *See Van Dinh*, 197 F.3d at 433-34; *Zheng v. Decker*, No. 14-cv-4663 (MHD), 2014 WL 7190993, at *15-16 (S.D.N.Y. Dec. 12, 2014) (citing Sections 1231(g) and 1252(a)(2)(B) to find lack of jurisdiction to review transfer of immigration detainee); *Avramenkov v. I.N.S.*, 99 F. Supp. 2d 210, 213–15 (D. Conn. 2000) (holding that due to discretionary review bar of 8 U.S.C. § 1252(a)(2)(B)(ii) "the court lacks jurisdiction to prevent the INS from transferring the Petitioner to a federal detention facility in Oakdale, Louisiana."); *Earle v. Copes*, No. 2:05-CV-1614, 2005 WL 2999149, at *1 (W.D. La. Nov. 8, 2005) ("Decisions regarding the place of

confinement for aliens subject to removal orders are within the discretion of the Attorney General and not subject to judicial review.").

## II. The discretion to transfer aliens precludes the Court from reviewing that discretion.

Even if the detention transfer statute is not specific enough to justify the application of the jurisdiction-limiting provision of Section 1252(a)(2)(B)(ii), the Government's unfettered general discretion to transfer aliens, acknowledged by the authorities cited above, precludes judicial review of those decisions.

There can be no judicial review "where statutes are drawn in such broad terms that in a given case there is no law to apply." *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 410 (1971) (internal quotation marks omitted). There is no law to apply if "the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Heckler v. Chaney*, 470 U.S. 821, 830 (1985). Thus, judicial review is foreclosed if the agency action of which plaintiff complains fails to raise a legal issue which can be reviewed by the court by reference to statutory standards and legislative intent. *Inova Alexandria Hosp. v. Shalala*, 244 F.3d 342, 346 (4th Cir. 2001); *cf. Kucana*, 558 U.S. at 250 ("We do not reach the question whether review of a reopening denial would be precluded if the court would lack jurisdiction over the alien's underlying claim for relief.").

Here, as Plaintiffs concede, there are no statutory or regulatory standards governing the transfer of detained aliens, and thus decisions about where and when to transfer aliens remains in the Government's unfettered discretion. As such, the Court lacks the jurisdiction to review such transfers, including the ones challenged in this action. *See Heckler*, 470 U.S. at 830. For this additional reason, the Court can dismiss the Amended Complaint for lack of subject matter jurisdiction.

**III.     Plaintiffs have no substantive due process right to in-state immigration detention.**

In an apparent effort to persuade the Court that detained aliens have a *procedural* due process right to notice and a hearing before being transferred out of Virginia, Plaintiffs make concessions that doom their claim that Plaintiffs have a *substantive* due process right not to be transferred out of Virginia at all. Plaintiffs now claim that they "do not ask this Court to 'preclude[] federal immigration authorities from transferring immigration detainees to facilities located outside Virginia.'" Opp'n 2 (quoting Mem. in Support of Mot. to Dismiss 1). Leaving aside the fact that Defendants accurately characterized Plaintiffs' substantive due process claim, when Plaintiffs claim that they now merely seek a degree of process before alien detainees are transferred out of Virginia, they undermine (if not outright abandon) their claim that such transfers violate Plaintiffs' substantive due process rights.

A violation of substantive due process occurs only where the government's actions in depriving a person of life, liberty, or property are so unjust that no amount of fair procedure can rectify them. *Love v. Pepersack*, 47 F.3d 120, 123 (4th Cir. 1995). The protections of substantive due process are "an absolute check on certain governmental actions notwithstanding the fairness of the procedures used to implement them." *Id.* (internal citations omitted). Thus, by admitting that they do not seek an absolute prohibition on the transfer of aliens out of Virginia, but only to impose procedures surrounding such transfers, Plaintiffs admit that such a transfer does not violate Plaintiffs' substantive due process rights.

**IV.     Plaintiffs have failed to establish a substantive due process right that prevents their transfer.**

The Court has further reason to reject Plaintiffs' due process claims. In admonishments repeated in Defendants' Motion to Dismiss, the Supreme Court has repeatedly warned against analyzing claimed substantive due process rights "at too general a level." *Washington v.*

5

*Glucksberg,* 521 U.S. 702, 720 (1997). In their opposition, Plaintiffs have disregarded that precept. They have, instead, compiled a series of due process cases involving the right to family unity and argued that their claimed right falls somewhere within that protected continuum of rights. Opp'n 27. That is not, however, how courts conduct substantive due process analyses. To avoid enshrining the mere policy preferences of judges as the substantive liberties protected by the Due Process Clause, any inquiry into the existence of a substantive due process right requires a "careful description of the asserted fundamental liberty interest." *Glucksberg*, 521 U.S. at 720 (quotation omitted). Then, in discerning whether that claimed right is protected by substantive due process, courts must determine whether the challenged conduct was "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998). In doing so, courts must rely on the "Nation's history, legal traditions, and practices," *Glucksberg*, 521 U.S. at 720 (1997) (internal citations omitted), and on guideposts established by the actions of executive officials in comparable situations and by courts reviewing those actions. *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998).

Rather than specifically describe the right to which they claim substantive due process protection, Plaintiffs discuss the general right to family unity and the various ways in which the Supreme Court has characterized it. Opp'n 15-18 & n.4. But as the First Circuit held in a case squarely on point, none of those cases involve the same substantive due process claimed here: the right of alien detainees not to be transferred far from – or at least to a different state as – their children. *See Aguilar v. U.S. Immigr. & Customs Enforcement*, 510 F.3d 1, 23 (1st Cir. 2007). As the Fourth Circuit has recognized, the concept of familial privacy, limned by the cases cited by Plaintiffs, has been restricted by the Supreme Court to "(1) thwarting governmental attempts to

interfere with particularly intimate family decisions, and (2) voiding government actions that sever, alter, or otherwise affect the parent/child relationship." *Hodge v. Jones*, 31 F.3d 157, 163 (4th Cir. 1994). Examples of the first type of case involve family living arrangements, mandatory maternity leave without pay; abortion, contraception, and the parochial education of children." *Id.* at 163 n.6 (collecting cases). Examples of the second type of case involve the termination of parental rights, presumptions in determining paternity, and the right of unwed fathers to the custody of their children. *Id.* n.7 (collecting cases).

The cases that Plaintiffs cite fall into these same two categories. Those cases involve the right of parents to lead their children in the exercise of religious belief, specifically distribution of religious literature, *Prince v. Massachusetts*, 321 U.S. 158 (1944); the right of an unwed father to a hearing on his fitness as a parent before he lost custody over his children after the death of the children's mother, *Stanley v. Illinois*, 405 U.S. 645, 649 (1972); the right of women to work while pregnant, *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632, 638-40 (1974); the right of a birth father to challenge his child's adoption by another family, *Quilloin v. Walcott*, 434 U.S. 246, 247 (1978); and the right of children not to be removed from their homes and taken into protective custody. *Brokaw v. Mercer Cty.*, 235 F.3d 1000, 1018 (7th Cir. 2000). All of those cases are "markedly different" from the substantive due process right claimed here, in which Plaintiffs argue that aliens have the right to be held in immigration detention within the same state as one's children. *Aguilar*, 510 F.3d at 23.

Plaintiffs' reliance on generalities and inapt comparisons stands out the clearest when they claim that "family unity is also implicated in parent-child visitation" and that the "majority of federal circuits that have addressed the issue have concluded that parents have a protected liberty interest in visitation with their children." Opp'n 17-18. The cases that Plaintiffs cite

7

involve custody disputes between estranged parents. *See Brittain v. Hansen*, 451 F.3d 982, 985 (9th Cir. 2006); *Weller v. Dep't of Soc. Servs. for City of Baltimore*, 901 F.2d 387, 390 (4th Cir. 1990). Only by using the word "visitation" in its most general sense can Plaintiffs compare right of a parent who has lost primary *legal* custody of a child following a divorce proceeding to the alleged "visitation" right of a parent in Government detention to see his children in person (or, as is more appropriate here, the putative right to have the Government *facilitate* actual visitation by making it logistically simpler). Such generalities do not suffice to establish substantive due process rights. *See Glucksberg,* 521 U.S. at 720.

Indeed, even in the cases that Plaintiffs cite, courts have held that the mere recitation of the "right to family unity" will not protect an alleged right if its specific contours fall outside the traditionally protected sphere of rights that the Supreme Court has recognized. In *Hodge*, the Fourth Circuit acknowledged the "amorphous" right to family unity and privacy, 31 F.3d at 163-64, but found that the "pale shadow briefly cast over the Hodges by Defendants' actions cannot be classified within either of the lines of Supreme Court familial privacy cases, and thereby constitutes '[s]tate action that affects the parental relationship only incidentally . . . [and] is not sufficient to establish a violation of a [sic] identified liberty interest.'" *Id.* at 164 (internal citations omitted). Similarly, in *Quilloin*, the Court held that while the Due Process Clause would be offended if a State were to attempt to force the breakup of a natural family without some showing of unfitness, it rejected plaintiff's cause of action after finding that the plaintiff was not, in fact, raising such a claim. *See Quilloin*, 434 U.S. at 255. Here, Plaintiffs do not accuse the Government of attempting to force the breakup of a natural family. At most, the Government's execution of its discretion to detain aliens pending their removal proceeding incidentally affects the ability of children to visit their detained alien parents in person. That "evenhanded

8

enforcement of the immigration laws, in and of itself, cannot conceivably be held to violate substantive due process." *See Aguilar*, 510 F.3d at 22.

It is true that some of the cases Defendants cite involving the lack of a family unity interest differ somewhat from the specific right presented here. But Defendants cited one set of cases in which the plaintiffs asserted the right to family unity to challenge a different government action but in the same legal context as in this case, immigration. Mem. in Support of Mot. to Dismiss 14-15. In another set of cases that Defendants cited, the plaintiffs asserted the right to family unity to challenge the same government action as in this case, but in a different legal context, criminal detention. *Id.* 15-16. In both sets of cases, the courts rejected the notion that a right to family unity could curtail government action. Those cases provide the appropriate benchmarks that should guide the Court to deny Plaintiffs' substantive due process right. *See Lewis,* 523 U.S. at 847 n.8.

Finally, only one circuit court case and one district court case have examined the alleged substantive due right to family unity in a challenge to the government action challenged here, and in the same legal context of immigration. Both those cases found no substantive due process right to family unity that requires alien detainees to be detained in locations that facilitate family visits. *See Aguilar*, 510 F.3d at 23; *Lin v. United States*, No. CIV.A. 5:07-CV-26, 2007 WL 951618, at *5 (S.D. Tex. Mar. 28, 2007). Indeed, the *Aguilar* court stated that it had "scoured the case law for any authority suggesting that claims similar to those asserted here are actionable under the substantive component of the Due Process Clause, and we have found none." *Aguilar*, 510 F.3d at 23. That lack of authority is instructive and should indicate to the Court that Plaintiffs' claimed substantive due process right does not exist.

### V. Plaintiffs have no procedural due process right to notice and a hearing before transfer.

Nor does Plaintiffs' claimed procedural due process right exist. "In assessing a claim based on an alleged denial of procedural due process a court must first decide whether the complaining party has been deprived of a constitutionally protected liberty or property interest. Absent such a deprivation, there can be no denial of due process." *Econ. Dev. Corp. of Dade Cty. v. Stierheim*, 782 F.2d 952, 953–54 (11th Cir. 1986); *see Mills v. Holmes,* 95 F. Supp. 3d 924, 931 (E.D. Va. 2015) (Ellis, J.) ("If no 'life, liberty, or property' interest within the meaning of the Constitution is in issue, then there can be no deprivation of constitutional due process."); *see also Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 569 (1972) ("The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property."). "The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation" and firmly establishes that "what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as of the private interest that has been affected by governmental action." *Cafeteria & Rest. Workers Union v. McElroy*, 367 U.S. 886, 895 (1961).

Because Plaintiffs have no liberty interest in detention in a specific location, they have no procedural due process right to notice and a hearing before being transferred. As Plaintiffs point out, *Aguilar* did not address the alien's procedural due process right to notice and a hearing, *see* Opp'n 19; *Aguilar*, 510 F.3d at 12-13 & n.3; But any further procedural due process analysis was not necessary because the Court had already found that plaintiffs had failed to establish a cognizable liberty interest against being transferred. *See Aguilar*, 510 F.3d at 23. And, in an analogous context, the Supreme Court denied a procedural due process right claim to notice and

a hearing before the transfer of criminal detainees. The Court did so because it had already found that detainees had no cognizable liberty interest against being transferred. *See Meachum v. Fano*, 427 U.S. 215, 228-29 (1976); *Montanye v. Haymes*, 427 U.S. 236, 242. With no cognizable liberty interest to protect here, Plaintiffs have failed to state a claim for any process for protecting a non-cognizable liberty interest. *See id.*

## VI. Plaintiffs' individual claims are moot.

In their motion to dismiss, Defendants pointed out that the individual habeas claims of Macario Diaz Morales and Humberto Ramos Raygoza are moot because they have been released from detention on bond. Mem. in Support of Mot. to Dismiss 22-23 & n. 7.[2] In their Opposition, Plaintiffs seek to distinguish cases that have found habeas claims moot when aliens sought release from release from detention and were then released during the pendency of the action. Opp'n 13 (citing *Atem v. Ashcroft*, 312 F. Supp. 2d 792, 796 (E.D. Va. 2004) (Ellis, J.)). Plaintiffs argue that their claims are different because they do not seek release from detention but "raise other legal issues" involving the transfer of detained aliens to facilities outside of Virginia. *Id.* But if an alien's release from detention moots a habeas case challenging detention, then an alien's release from detention must also, by necessity, moot any alleged harm that requires, as a first step, the alien's detention. In this action, Plaintiffs challenge their transfers. Am. Compl. ¶¶ 70, 74, 77. But that alleged harm requires aliens to be first detained and then transferred to a facility outside of Virginia; immigration officials, after all, cannot transfer aliens who are no longer in their custody. Because Mr. Diaz Morales and Mr. Ramos Raygoza have been released from immigration detention on bond ordered by an immigration judge, they no longer face a reasonably foreseeable (let alone imminent) possibility of being redetained and transferred to a

---

[2] Plaintiffs have confirmed that Mr. Ramos Raygoza, like Mr. Diaz Morales, has been released from immigration detention. Opp'n 4.

11

detention facility in another state. Their individual claims, therefore, are moot, and the Court should dismiss the Petition's third cause of action seeking individual writs of habeas corpus for them. See *Elnour v. Crawford*, No. 1:13CV923 JCC/TCB, 2013 WL 6571828, at *1 (E.D. Va. Dec. 13, 2013) ("It is well-settled that a habeas corpus petition seeking release from immigration detention is moot when the petitioner is no longer held in detention.").

The Court should reject Plaintiffs' argument that Mr. Diaz Morales and Mr. Ramos Raygoza's individual claims are not moot because their bond might be revoked and they might be redetained in the future. Opp'n at 10-11. But as Plaintiffs themselves acknowledge, after their release on bond ordered by an immigration judge, ICE can redetain Mr. Diaz Morales and Mr. Ramos Raygoza only "upon a finding of changed circumstances." Opp'n 10 (citing *Saravia v. Sessions*, No. 17-cv-03615, 2017 WL 5569838, at *16 (N.D. Cal., Nov. 20, 2017) (quoting, in turn, *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981)).

In their Opposition, Plaintiffs do not even bother to provide conjecture about what changed circumstances might cause the cancellation of their bond or the likelihood of those circumstances. But even if they had offered such speculation, the speculative fear that an alleged wrong may reoccur does not provide a basis for invoking either the voluntary cessation or capable of repetition without review exceptions to the mootness doctrine. *See Preiser v. Newkirk*, 422 U.S. 395, 402-03 (1975). "[C]onjecture as to the likelihood of repetition has no place in the application of this exceptional and narrow grant of judicial power to hear cases for which there is in fact a reasonable expectation of repetition." *Incumaa v. Ozmint*, 507 F.3d 281, 289 (4th Cir. 2007) (internal quotes and citations omitted); *Haley v. Pataki*, 60 F.3d 137, 141 (2nd Cir.1995) (when the repetition of the events giving rise to the preliminary injunction is entirely speculative, the capable of repetition exception does not apply). In short, Plaintiffs have provided the Court

with no reason to save Mr. Diaz Morales's and Mr. Ramos Raygoza's individual claims from dismissal for mootness.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' substantive and procedural due process claims or, in the alternative, dismiss as moot the individual claims of Mr. Diaz Morales and Mr. Ramos Raygoza, and dismiss them, their children, and their stepchildren as individual plaintiffs.

Dated: January 3, 2018　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　CHAD A. READLER
　　　　　　　　　　　　　　　　　　　　Acting Assistant Attorney General
　　　　　　　　　　　　　　　　　　　　U.S. Department of Justice, Civil Division

　　　　　　　　　　　　　　　　　　　　DANA J. BOENTE
　　　　　　　　　　　　　　　　　　　　United States Attorney

　　　　　　　　　　　　　　　　　　　　WILLIAM C. PEACHEY
　　　　　　　　　　　　　　　　　　　　Director
　　　　　　　　　　　　　　　　　　　　Office of Immigration Ligation
　　　　　　　　　　　　　　　　　　　　District Court Section

　　　　　　　　　　　　　　　　　　　　JEFFREY S. ROBINS
　　　　　　　　　　　　　　　　　　　　Assistant Director

　　　　　　　　　　　　　　　　　　　　*/s/ Hans H. Chen*
　　　　　　　　　　　　　　　　　　　　HANS H. CHEN
　　　　　　　　　　　　　　　　　　　　Senior Litigation Counsel

　　　　　　　　　　　　　　　　　　　　JULIAN M. KURZ
　　　　　　　　　　　　　　　　　　　　Trial Attorney

　　　　　　　　　　　　　　　　　　　　U.S. Department of Justice, Civil Division
　　　　　　　　　　　　　　　　　　　　Office of Immigration Litigation
　　　　　　　　　　　　　　　　　　　　District Court Section
　　　　　　　　　　　　　　　　　　　　P.O. Box 868, Washington, DC 20044
　　　　　　　　　　　　　　　　　　　　Telephone: (202) 305-4469
　　　　　　　　　　　　　　　　　　　　Fax: (202) 305-7000
　　　　　　　　　　　　　　　　　　　　hans.h.chen@usdoj.gov

　　　　　　　　　　　　　　　　　　　　DENNIS C. BARGHAAN, JR.
　　　　　　　　　　　　　　　　　　　　Deputy Chief, Civil Division
　　　　　　　　　　　　　　　　　　　　Assistant U.S. Attorney
　　　　　　　　　　　　　　　　　　　　2100 Jamieson Avenue
　　　　　　　　　　　　　　　　　　　　Alexandria, Virginia 22314
　　　　　　　　　　　　　　　　　　　　Telephone: (703) 299-3891
　　　　　　　　　　　　　　　　　　　　Fax: (703) 299-3983
　　　　　　　　　　　　　　　　　　　　dennis.barghaan@usdoj.gov

　　　　　　　　　　　　　　　　　　　　ATTORNEYS FOR DEFENDANTS

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 3, 2018, I will file the foregoing document with the Clerk of Court through the Court's ECF system, which will then send a notification of electronic filing to counsel for all parties.

Dated: January 3, 2018                     */s/ Hans H. Chen*
                                            HANS H. CHEN
                                            Senior Litigation Counsel
                                            U.S. Department of Justice, Civil Division
                                            Office of Immigration Litigation
                                            District Court Section

                                            ATTORNEY FOR DEFENDANTS