IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ARELI VEGA REYNA, ET AL., <br><br> *Plaintiffs,* <br><br> v. <br><br> RUSSELL HOTT, ET AL., <br><br> *Defendants.* | Case No. 1:17-cv-01192 <br> Hon. Liam O'Grady |

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Defendants' motion to dismiss. Dkt. 15. The motion is fully briefed and the Court heard oral arguments on January 12, 2018. For the following reasons and for good cause shown, the motion to dismiss is **GRANTED**. Also pending before the Court is Defendants' Amended Motion for Leave to File Declaration of Adonnis T. Smith. Dkt. 33. For good cause shown, the Motion is **GRANTED**. The declaration as attached to the Motion for Leave to File is considered filed for purposes of the instant motion to dismiss.[1]

### I. BACKGROUND

Plaintiffs in this case are the children of two individuals who were held in the custody of Immigration and Customs Enforcement (ICE) at the time the case was filed, as well as the detained individuals themselves. Plaintiff Macario Diaz Morales is a resident of Alexandria, Virginia, where he lives with his three children, Plaintiffs J.D.V., J.F.G., and K.G. Mr. Diaz Morales's children are United States citizens. From September 13, 2017 to November 1, 2017, Mr. Diaz Morales was held by ICE in a detention facility in Farmville, Virginia. Though

---

[1] While the Court reviewed the declaration, it did not alter the Court's decision that it has subject matter jurisdiction over this case.

presently released on bond, he is still the subject of deportation proceedings.

Plaintiff Humberto Ramos Raygoza was detained by ICE on September 21, 2017. He was initially held at the same facility in Farmville, Virginia, but was transferred to Livingston, Texas on October 21, 2017. Mr. Ramos Raygoza is a resident of Woodbridge, Virginia, where he resided prior to detention with Plaintiffs M.V.R.C., K.D.R.M. Mr. Ramos Raygoza's children are United States citizens. Though presently released on bond, he is still the subject of deportation proceedings.

The operative complaint, filed on November 6, 2017, seeks to require ICE to consider the family situation of detainees in determining the facility placement of such detainees. The complaint alleges harm to both the detainees and their children from inter-facility transfer that removes the detainee from the geographic region in which he and his family reside. The complaint alleges that Plaintiffs represent two classes of plaintiffs: the parents of United States citizens who are subject to inter-facility transfer because of their lack of immigration status and the children themselves whose parents are subject to detention and inter-facility transfer. Plaintiffs contend that by not considering a detainee's family situation prior to inter-facility transfer, Plaintiffs' substantive and procedural due process rights are violated. Plaintiffs also seek a writ of habeas corpus because of the alleged constitutionally defective inter-facility transfers. At the core of the complaint, Plaintiffs contend that there is a substantive due process right to family unity, ICE inter-facility transfers of detainees away from their children implicate that right, and both the detainees and their children have a procedural due process right to notice and an opportunity to be heard prior to any such transfer.

Plaintiffs have filed a motion to certify class and it is pending before the Court. Dkt. 8.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) permits the defendant to move for dismissal of a claim when the court lacks subject matter jurisdiction. FED. R. CIV. P. 12(b)(1). The court must dismiss the action if it determines at any time that it lacks subject matter jurisdiction. FED. R. CIV. P. 12(h)(3). Defendants may, as in this case, attack "the existence of subject matter jurisdiction in fact, quite apart from any pleading" because even with sufficient pleading, the district court could not have jurisdiction over the claim. *White v. CMA Const. Co. Inc.*, F. Supp. 231, 233 (E.D. Va. 1996). The plaintiff bears the burden to establish that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999). The Court grants a Rule 12(b)(1) motion if the material jurisdictional facts are known and the moving party is entitled to prevail as a matter of law. *See Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual information to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 550 (2007). A motion to dismiss pursuant to Rule 12(b)(6) must be considered in combination with Rule 8(a)(2), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief" so as to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." FED. R. CIV. P. 8(a)(2); *Twombly*, 550 U.S. at 555. While "detailed factual allegations" are not required, Rule 8 does demand that a plaintiff provide more than mere labels and conclusions stating that the plaintiff is entitled to relief. *Id.* Because a Rule 12(b)(6) motion tests the sufficiency of a complaint without resolving factual disputes, a district court "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the

plaintiff.'" *Kensington Volunteer Fire Dep't v. Montgomery County*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)).

### III. DISCUSSION

The Government has moved to dismiss the complaint under FED. R. CIV. P. 12(b)(1) and 12(b)(6) on four grounds. First, the Government contends that 8 U.S.C. § 1252(a)(2)(B)(ii) denies the Court subject matter jurisdiction over constitutional questions arising from immigration detention decisions. Second, the Government contends that there is no substantive due process right implicated by inter-facility transfer of detainees. Third, the Government contends that Plaintiffs do not have a procedural due process right to pre-transfer notice and hearing. Finally, the Government argues that because Mr. Diaz Morales has been released from ICE custody, his and his children's claims are moot and should be dismissed.

Because the Court should not reach the question of whether Plaintiffs have stated a claim upon which relief can be granted where no subject matter jurisdiction exists, the Court will address the jurisdictional issues first.

*8 U.S.C. § 1252*

The Government contends that 8 U.S.C. § 1252 deprives federal courts of jurisdiction over claims arising from discretionary immigration decisions and that an inter-facility transfer is such a decision. For this statute to function as a legal bar in this case, it would need to be expansively read to deprive federal courts of jurisdiction over constitutional issues arising from discretionary acts in the detention and removal context of the Immigration and Nationality Act. The recent Supreme Court decision in *Jennings v. Rodriguez* is instructive on this issue. *See Jennings v. Rodriguez*, 138 S.Ct. 830, 839-41 (2018) (construing § 1252(b)(9)'s limitation as

inapplicable to constitutional challenges).

While Section II of *Rodriguez* addressing the limited applicability of § 1252(b)(9) is joined by only a plurality of Justices, the principle as applied to the sort of constitutional challenge the Court faces here finds support in the concurrence. *Id*. at *855 (Thomas, J. *concurring*) ("Thus, my conclusion that §1252(b)(9) covers an alien's challenge to the *fact* of his detention (an action taken in pursuit of the lawful objective of removal) says nothing about whether it also covers claims about inhumane treatment, assaults, or negligently inflicted injuries suffered *during* detention (actions that go beyond the Government's lawful pursuit of its removal objective). The plurality opinion on the issue finds further support in the dissent, where §1252(b)(9) is narrowly construed to apply only to orders of removal. *Id.* at 882 (Breyer, J. *dissenting*).

As §1252(b)(9) cannot be construed to foreclose an Article III court from reviewing the constitutionality of executive actions against persons held in ICE custody, there are no grounds to believe that § 1252(a)(2)(B)(ii) could foreclose such review in this matter. *See Aguilar v. U.S. Immigr. & Customs Enforcement*, 510 F.3d 1, 21 (1st Cir. 2007); *cf. Kucana v. Holder*, 558 U.S. 233, 251-52 (2010). The operative complaint does not simply challenge the legality of administrative action, it challenges the constitutionality of that action. Accordingly, the Government is not entitled to dismissal pursuant to FED. R. CIV. P. 12(b)(1) on this ground.

*Mootness*

The Government also seeks dismissal of the claims under FED. R. CIV. P. 12(b)(1) on the grounds that the claims have been mooted by Mr. Diaz Morales's and Mr. Ramos Raygoza's release from detention. However, because this case deals with finite periods of detention that are capable of repetition while evading review, because the defendants are in a position to "pick off"

5

would-be plaintiffs by freeing them from detention, because Plaintiffs have a pending motion for class certification in this matter, and because there is no debate that Plaintiffs had standing at the time this case was filed, this case is not moot. *See Sosna v. Iowa*, 419 U.S. 393, 401-02 (1975); *Richardson v. Bledsoe*, 829 F.3d 273 (3d Cir. 2016) (applying the relation back doctrine to the picking off exception to mootness).

Additionally, Mr. Ramos Raygoza's completed inter-facility transfer by itself defeats the Government's mootness argument as to him and his children. The claims in this case arise from allegedly unconstitutional inter-facility transfer without notice and an opportunity to be heard. Under the plain terms of the amended complaint, Mr. Ramos Raygoza's claims are for a harm already alleged to have been suffered, regardless of whether that harm is likely to be suffered by Mr. Ramos Raygoza and his children again in the future.

For these reasons, this case is not moot and the Government is not entitled to dismissal for lack of subject matter jurisdiction.

The subject matter jurisdiction issues resolved, the Court reaches the merits of the complaint. Plaintiffs have contended that they have a substantive due process right to family unity and that such a substantive right entitles them to procedural due process when the detainee parent is subjected to inter-facility transfer without notice and an opportunity for both the detainee and his family to be heard. Defendants contend that there is no such substantive due process right and, accordingly, no such procedural due process right.

*Substantive Due Process*

There can be little doubt that there is, broadly, a liberty interest in family unity. "[T]he interest of parents in the care, custody and control of their children [] is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme Court]." *Troxel v. Granville*, 530 U.S.

57, 65 (2000). Children "enjoy a reciprocal right to be raised and nurtured by their parents." *Beltran v. Cardall*, 222 F.Supp.3d 476, 481-82 (2016) (internal quotations omitted). These rights are "deserving of the greatest solicitude." *Jordan by Jordan v. Jackson*, 15 F.3d 333, 345-46 (4th Cir. 1994). They are "essential to the basic civil rights of man, and rights far more precious than property rights." *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) (citations and alterations omitted).

What this right ultimately encompasses is defined by the existing case law – the Court must be "reluctant to expand the concept of substantive due process . . . lest the liberty protected by the Due Process Clause be subtly transformed into the policy preferences of . . . [the] Court." *See Washington v. Glucksburg*, 521 U.S. 702, 720 (1997). The Supreme Court has cautioned against finding generalized substantive due process rights, instead requiring a "careful description of the asserted fundamental liberty interest." *Id.* at 720-21. Understandably, then, courts have rejected the argument that a broad liberty right to family unity translates into a substantive due process right against detention or detainee transfer pursuant to the government's immigration powers. *See Lin v. United States*, 2007 WL 951618 at *5 (S.D. Tx. Mar. 28, 2007); *Aguilar v. U.S. Immigr. & Customs Enforcement*, 510 F.3d 1, 22 (1st Cir. 2007). The Court need not reach a final analysis of the scope of the right claimed here because even if Plaintiffs' claimed substantive due process right was indisputable, Plaintiffs have still failed to state a claim for a substantive due process violation because any government intrusion on that right is reasonable and incidental.

To state a claim for a deprivation of a substantive due process right, the government's conduct must shock the conscience or interfere with rights implicit to the concept of ordered liberty. *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998). For conduct to shock the conscience, it generally must be the result of deliberate conduct by the government. *Id.* at 849

(quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). The conduct must generally be "so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." *Rucker v. Harford County*, 946 F.2d 278, 281 (4th Cir. 1991). This analysis must be "informed by a history of liberty protection, but it necessarily reflects an understanding of traditional executive behavior, of contemporary practice, and of the standards of blame generally applied to them." *Cty. of Sacramento*, 523 U.S. at 847 n. 8.

The Court cannot find that the conduct at issue shocks the conscience. There is no claim in the complaint that the inter-facility transfers are deliberately designed to punish detainees or their children by stripping them of their family unity. *See Quilloin v. Walcott*, 434 U.S. 246, 255 (1978) ("We have little doubt that the Due Process Clause would be offended "[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness. . ." (quoting *Smith v. Organization of Foster Families*, 431 U.S. 816, 862-63 (1977) (Stewart, J. concurring))). Rather, inter-facility transfer is fundamental to the discretionary executive functions of operating detention facilities and any harm to family unity is incidental to the exercise of that discretion. *See Aguilar v. U.S. Immigr. & Customs Enforcement*, 510 F.3d 1, 21-22 (1st Cir. 2007) (holding that "incidental interference [in the parent-child relationship by inter-facility transfer] . . . is not of constitutional magnitude"); *cf. Olim v. Wakinekona*, 461 U.S. 238, 245 (1983).

Because the governmental conduct at issue here does not shock the conscience, Plaintiffs have failed to state a claim for violation of their substantive due process rights.

*Procedural Due Process*

Turning to Plaintiffs' claim that they are denied required procedural due process when a detainee's inter-facility transfer occurs without notice to the detainee and his family and an opportunity for those parties to be heard, the Court again finds that Plaintiffs have failed to state a claim. Procedural due process is implicated where "government decisions [ ] deprive individuals of 'liberty' or 'property' interests." *Mathews v. Elkridge*, 424 U.S. 319, 332 (1976). A plaintiff must prove that he possessed a protected liberty (or property) interest and he was deprived of that interest without process to which he was constitutionally entitled. *See Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972). But "The range of interests protected by procedural due process is not infinite." *Id.* at 570.

*Mathews* provides courts with the framework for assessing procedural due process claims by identifying three factors to be weighed against each other. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529-30 (2004). These factors are (1) the nature of the private interest that will be affected, (2) the comparative risk of an erroneous deprivation of that interest with and without additional or substitute procedural safeguards, and (3) the nature and magnitude of any countervailing interest in not providing additional or substitute procedural requirements. *Turner v. Rogers*, 564 U.S. 431, 444-45 (2011).

Plaintiffs contend in their complaint that the same right to family unity that gives rise to a substantive due process claim also gives rise to a procedural due process claim. Specifically, Plaintiffs contend that they are entitled to notice and opportunity to be heard prior to inter-facility transfer. The Court must begin the *Mathews* analysis by examining this same right asserted by Plaintiffs in their substantive due process claim. Detainees are not necessarily constitutionally entitled to in-person visitation. *See Block v. Rutherford*, 468 U.S. 576, 589 (1985) (finding no Due Process Clause violation where a jail policy forbade in-person contact

between detainee and family). As discussed *supra*, Plaintiffs frame the right alleged here too broadly, enticing the Court to disregard the Supreme Court's express cautions in *Glucksberg* by applying an overly generalized family unity right to a highly specific context – inter-facility transfer of immigration detainees with U.S.-based children. The Government is thus correct that the failure to state a specific cognizable liberty interest is fatal to Plaintiffs' case under the *Mathews* framework. Dkt. 16, p. 21 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976) and *Montanye v. Haymes*, 427 U.S. 236, 243 (1976) for the proposition that without a recognized substantive right, inter-facility transfer of a detainee without notice and hearing cannot implicate a protected liberty interest).

The Government concedes that detention statutes, regulations, or policies can bestow protected liberty interests. *See Hewitt v. Helms*, 459 U.S. 460, 471 (1983). However, Plaintiffs do not allege such an expressly granted liberty interest here. Indeed, Plaintiffs concede that ICE policy expressly forbids notice from being given to detainees prior to inter-facility transfer. This is the express absence of a right conferred by policy, statute, or regulation.

Assuming *arguendo* that the right to family unity Plaintiffs allege is specific enough to trigger a *Mathews* analysis, Plaintiffs still would fail to state a claim for a procedural due process violation because detainees generally receive notice and an opportunity to be heard at a detention hearing. Plaintiffs seek to balance their asserted right against the procedural processes made available at the time of inter-facility transfer. The more relevant time for procedural safeguards is not the time of inter-facility transfer but rather the time of detention – that is the critical moment where parent and child are separated and their interests in mutual presence substantially implicated.[2] As noted *supra*, any additional implication of the alleged right occurring at the time

---

[2] It is detention that necessitates communication by telephone, letter, or visitation. Inter-facility transfer leaves all three methods of contact between parent and child intact, only making the latter more difficult. The extent of any

of inter-facility transfer is incidental to that transfer and overshadowed by the overall detention of the individual.

The procedural safeguards in place at the time of detention satisfy even more compelling liberty interests than those Plaintiffs contend are at stake here – actual physical liberty – while still concerned with family impact. Under those safeguards, individuals detained pursuant to 8 U.S.C. § 1226(a) are entitled to individualized detention hearings. *See, e.g., Abdi v. Nielsen*, 2018 WL 798747 at *5 (W.D.N.Y. Feb. 9, 2018) (noting that 8 U.S.C. § 1226(a)(2) entitles persons detained under this section to a detention hearing). Among the factors an immigration judge considers are the detainee's family ties in the United States. *Id.* at *6. While true that not all immigration detainees are entitled to such hearings, the denial of that procedural safeguard in such cases does not offend the Due Process Clause's protection of essential liberty interests because of the government interests at stake in such circumstances and earlier detention hearings on criminal charges. *See Demore v. Kim*, 538 U.S. 510, 526-31 (2003).

Because Plaintiffs have failed to plead a sufficiently specific and legally cognizable private interest implicated by inter-facility transfer with notice and an opportunity to be heard and because any sufficiently pleaded right would be implicated at the time of detention with inter-facility transfer representing a *de minimis* further implication of that right, Plaintiffs have failed to state a claim for a procedural due process violation.

*Habeas Corpus*

The habeas corpus claim in the Amended Complaint is predicated on the claims of substantive and procedural due process violations. Am. Compl. ¶ 77 ("Respondents transferred Petitioner . . . without first providing him and his minor . . . children notice and an opportunity to be heard. Respondents' detention of Petitioner . . . is therefore in violation of the Constitution,

---

added burden is dependent on the proximity between the detainee's initial detention facility and his family.

rendering it unlawful, and a writ of habeas corpus should issue"). Because the Court has found that Plaintiffs' have failed to state a claim for substantive and procedural due process violations, Mr. Ramos-Raygoza's petition for a writ of habeas corpus on these grounds must be denied.

### III. CONCLUSION

For these reasons and for good cause shown, the Government's Motion to Dismiss is **GRANTED**. This case is dismissed and all pending motions are **DENIED** as moot.

It is **SO ORDERED**.

March 20, 2018
Alexandria, Virginia

Liam O'Grady
United States District Judge